J-E03007-20

2021 PA Super 107

| | | |
|---|---|---|
| C.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.P. | : | |
| | : | |
| Appellant | : | No. 1958 MDA 2019 |

Appeal from the Order Entered November 15, 2019
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s): 2019-FC-41210

| | | |
|---|---|---|
| C.L. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.P. | : | |
| | : | |
| Appellant | : | No. 1959 MDA 2019 |

Appeal from the Order Entered October 29, 2019
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s): 2019-FC-41210

BEFORE: PANELLA, P.J., BENDER, P.J.E., BOWES, J., LAZARUS, J., OLSON,
J., STABILE, J., NICHOLS, J., McLAUGHLIN, J., and KING, J.

OPINION BY NICHOLS, J.: **FILED MAY 26, 2021**

M.P. (Mother) files these consolidated appeals from the orders that

appointed a guardian *ad litem* (GAL), and provided the GAL access to the

mental health records of Mother and C.L. (Father) from the last three years.

This Court granted *en banc* reargument to consider three issues, which we

have reordered as follows: (1) whether participation in a custody action results

in waiver of protection by the Mental Health Procedures Act[1] (MHPA); (2) whether the Custody Act provides for the "least intrusive means" of a sufficient mental-health evaluation of the parent, or whether the trial court may order a limited disclosure of the records; and (3) whether the trial court erred in disclosing confidential mental health records to the GAL.[2] *See* Order, 1958 MDA 2019 & 1959 MDA 2019, 8/25/20, at 1-2. Mother and Father filed substitute briefs, and the GAL has also filed a late appellee's brief. For the

---

[1] 23 Pa.C.S. § 5334.

[2] A prior divided panel of this Court affirmed the trial court's orders in a memorandum decision that has been withdrawn. *See C.L. v. M.P.*, 1958 MDA 2019 & 1959 MDA 2019 at 2 (Pa. Super. filed July 8, 2020) (withdrawn Aug. 25, 2020). The majority acknowledged that Mother did not waive her confidentiality privilege under the MHPA. *Id.* at 18 n.10. However, the majority concluded that the trial court did not violate Mother's right to confidentiality under the MHPA because it "fashioned less intrusive alternatives by restricting the GAL's access to records from the last three years, restricting the GAL's disclosure of the records, allowing objections to the GAL's testimony and/or report or recommendation, and sealing the record." *Id.* at 18.

The dissent responded that the majority's opinion ignored this Court's "clear, factually on-point, and relatively recent custody precedents" in *M.M. v. L.M.*, 55 A.3d 1167 (Pa. Super. 2012) and *Gates v. Gates*, 967 A.2d 1024 (Pa. Super. 2009), which held that mental health records were not subject to disclosure in custody cases. *See C.L. v. M.P.*, 1958 MDA 2019 & 1959 MDA 2019 at 2 (Pa. Super. filed July 8, 2020) (Kunselman, J., dissenting). The dissent stated that the majority misapplied the "less intrusive means" analysis because (1) the less intrusive means already approved in custody cases is the evaluation provided in Rule 1915.8; (2) the MHPA confidentiality privilege protects **any** disclosure of mental health records and that privilege is not waived by limiting who receives the disclosed information; and (3) granting the GAL access to Mother's mental health records was no less intrusive than furnishing those records to Father. *Id.* at 7.

reasons that follow, we affirm in part, reverse in part, and remand the matter for further proceedings consistent with this decision.

The trial court set forth the relevant procedural history of this matter as follows:

On August 23, 2019, [Father] filed a Petition for Custody and a Petition for Emergency Special Relief in Custody *pro se*. [Father] alleged in both petitions that "[t]he mother of our child, [Mother] has become increasingly prone to erratic and hostile outbursts toward me in front of our child." [Father] also alleged that "[Mother] had an extensive mental health history . . . and has refused to seek any further treatment." Additionally, [Father] alleged that [Mother] "refused a suggested consultation . . . for post-partum depression/psychosis." Further, [Mother] "has been regularly dissociating to the point of forgetting big stretches at a time or where she is . . ." according to [Father]'s averments. [Father]'s Petition for Emergency Special Relief in Custody was granted *ex parte* . . . and scheduled for a hearing. Under [the] order, [Father] enjoyed temporary sole physical and legal custody of [Child].

Through counsel, [Mother] filed a Petition for Emergency Special Relief in Custody on August 27, 2019. [Mother] likewise alleged serious concerns regarding [Father]'s mental health and alleged physical, mental, and emotional abuse. Among [Mother]'s allegations of abuse were that: 1) [Father] was emotionally controlling and manipulative regarding who could see [Child]; 2) [Father] coerced [Mother] into severing ties with her parents; 3) [Father] talked to [Mother] in a degrading and manipulative manner in front of [Child]; 4) [Father] threatened to leave [Mother] and take [Child] as punishment for visiting her family; and 5) [Father] locked [Mother] out of the marital home and attempted to have her committed.

[Mother] also alleged that [Father] suffered from mental health conditions and was playing psychiatrist or gaslighting her. For example, [Mother] alleged that [Father] diagnosed [Mother] with "dissociative identity disorder" and tried to convince [Mother] that she suffered from this condition. Moreover, [Mother] put forth allegations that [Father] suffers from schizotypal personality disorder and was not taking medication or treating. [Father]'s

- 3 -

disorder manifested itself in bizarre alleged behavior, including telling [Mother] that Maternal Grandfather "pimped [Mother] out to his friends while she was unconscious[,]" and that [Father] was jealous of the sexual relationship [Mother] enjoyed with Maternal Grandfather[,] according to [Mother]'s petition. [Mother] further alleged at one point that [Father] threw himself on the ground and ripped at his clothing over a dispute as to whether Maternal Grandparents could see [Child] and carved the letter M into his arm for "no apparent reason" while [Mother] was otherwise caring for [Child]. "All of the above behaviors exhibited by [Father,]" [Mother] alleged, "call into question his mental health and his ability to adequately and safely care for [Child]."

[The trial court] denied [Mother]'s petition for emergency special relief . . . and the matters were consolidated for hearing before the [trial c]ourt. The parties, however, agreed to allow [Mother] periods of partial physical custody with no overnight periods pending the hearing on the petitions. The parties agreed that [Child] should have no contact with Maternal Grandparents.

Trial Ct. Op., 12/17/19, at 2-3 (record citations omitted).

The trial court held hearings on the parties' cross-petitions on September 10, 2019 and October 28, 2019. Both Mother and Father were present and represented by counsel. The trial court summarized the remaining procedural history as follows:

After the October 28, 2019[,] hearing, [the court] appointed Andrew Phillips, Esq.[,] as [GAL] of [Child] pursuant to 23 Pa.C.S. § 5334 due to the high conflict in the family and the sensitive nature of the allegations against each party and others associated. The order appointing the GAL was a form order pursuant to Rules 1915.11-2 and 1915.21 and contained language that allowed the GAL to access both parties' psychological or psychiatric charts, including evaluations, progress notes, test evaluations, and discharge summaries.

[Mother] then filed a petition for emergency special relief seeking reconsideration . . . of the October 29, 2019 order . . . citing the [MHPA], the psychologist-patient privilege, and relevant case law. Following oral argument on [Mother]'s petition for

- 4 -

reconsideration,[3] [the trial court] issued two orders on November 15, 2019[,] granting [Mother]'s petition for reconsideration in part and sealing this docket. Specifically, [the court] limited the [GAL's] access to three years of both parties' mental health records and ordered non-disclosure of such records, tailoring the order to the testimony in the case. [The trial court] also directed that [Father] and [Mother] submit to mental health evaluations and/or testing through one of two different providers pursuant to Pennsylvania Rule of Civil Procedure 1915.8. In that order, no limits were placed on the evaluator's ability to obtain prior mental health treatment records of the parties. [The trial court] later issued orders in compliance with [Pa.R.C.P.] 1915.18, limiting the parties' access to the evaluator's file without authorization from [the court].[4]

Trial Ct. Op. at 9-10 (record citations omitted and some formatting altered).

Mother, through counsel, subsequently filed timely notices of appeal and Pa.R.A.P. 1925(a)(2)(i) and (b) statements,[5] challenging the trial court's October 29, 2019 order which allowed access to Mother's mental health records, and the November 15, 2019 order which denied Mother's motion for reconsideration and provided the GAL with access to her mental health records

---

[3] While the notes of testimony from this hearing are not included as part of the certified record, they are included as part of the reproduced record. As their veracity is not in dispute, we rely on the copy contained within the Reproduced Record. **See Commonwealth v. Barnett**, 121 A.3d 534, 544 n.3 (Pa. Super. 2015) (stating that "[w]hile this Court generally may only consider facts that have been duly certified in the record, where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it") (citations omitted)).

[4] Mother does not challenge the order as it relates to the psychological evaluations and/or testing.

[5] Pursuant to the order of December 2, 2019, Mother was granted leave to amend her concise statement and such amended concise statement was treated as timely filed.

to the last three years.[6,7]     This Court consolidated Mother's appeals *sua sponte* on January 27, 2020.

**Parties' *En Banc* Arguments**

Mother argues that this Court "has already set precedent that mere participation in custody litigation does not constitute waiver of the protections of the MHPA and has rule[d] that confidential mental health records should not be susceptible to disclosure."  Mother's Brief at 7.  Mother asserts that "[i]n all custody cases, the current mental health status is an issue because it is a factor to be considered by the court."  ***Id.*** at 20.  Nonetheless, Mother argues that this Court has refused to conclude that, where mental health is at issue, it would serve "as either an implicit or explicit waiver of the bar to disclosure of records afforded by the MHPA."  ***Id.*** at 21.

Mother also argues that "limiting the disclosure of mental health records for a period of three (3) years to a GAL does nothing to assuage the violation of the MHPA" and "does not serve as a reasonable substitute for the less intrusive means provided under Rule 1915.8."  Mother's Brief at 24.  Further, she contends that "[a]s in ***Gates***, ***M.M.***, and ***Octave*** [***ex rel. Octave***, 103 A.3d 1255 (Pa. 2014)], the disclosure of past mental health records to a GAL is not the least, or even less, intrusive means for determining the current

---

[6] We find such orders are appealable as collateral orders pursuant to Pa.R.A.P. 313.  ***See M.M. v. L.M.***, 55 A.3d 1167, 1168 (Pa. Super. 2012).

[7] Upon motion of Mother, pursuant to order of December 3, 2019, the orders on appeal were stayed by the trial court.  ***See*** Trial Ct. Order, 12/3/19.

- 6 -

mental health status of a parent and may not even be the best or most accurate." *Id.* Instead, Mother asserts that "the 'less intrusive means' is achieved by directing that a parent undergo a mental health evaluation by a professional mental health evaluator" under Rule 1915.8. *Id.*

Finally, Mother argues that, "based upon the powers provided to a GAL . . . there is little distinction between a parent and a GAL involved in a custody action." Mother's Brief at 14. Mother asserts that "[d]isclosure of confidential mental health records to a GAL, who may be an unwitting proxy of the parent calling into question the mental fitness of the other parent, will have a chilling effect on a parent's decision to seek mental health assistance." *Id.* Further, she contends that it "may dissuade that parent from participating in a custody action, or to initiate or defend against that action" and that neither course "would serve the best interest of the minor child." *Id.*

Father responds that a party's MHPA "confidentiality protections can be waived where, 'judged by an objective standard, a party knew or reasonably should have known their mental health would be placed directly at issue by filing the lawsuit.'" Father's Brief at 5 (quoting *Octave*, 103 A.3d at 1256). Father contends that, here, the parties "placed each other's mental health condition(s) as a factor in awarding custody" and "[a]s such, the parties knew or reasonably should have known that mental health would be at issue at the time of [the] hearing." *Id.*

Father also argues that *M.M.* and *Gates* are distinguishable because "it is not the adverse party who is seeking the mental health records." *Id.* at 6.

Instead, Father contends that the "the trial court, *sua sponte*, in consideration of [Child's] best interest, appointed the GAL, who has statutory authority to access this information." *Id.* Further, Father asserts that the trial court "put into place several mechanisms to achieve this goal without impinging upon the parties' right to confidentiality" which included limiting the disclosure to records from the past three years, prohibiting the GAL from disclosing the information to the parties or the trial court, and sealing the record. *Id.*

**General Standards in Custody Matters**

In custody cases under the Child Custody Act (the Act), 23 Pa.C.S. §§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. *See* 23 Pa.C.S. §§ 5328, 5338. Section 5328(a) sets forth sixteen best interest factors that the trial court must consider in making a custody determination. 23 Pa.C.S. § 5328(a). The trial

court must consider "all relevant factors, giving weighted consideration to those factors which affect the safety of the child," which may include "[t]he mental and physical condition of a party." 23 Pa.C.S. § 5328(a), (a)(15).

In making this determination, the court "may order the child(ren) and/or any party to submit to and fully participate in an evaluation by an appropriate expert or experts." **See** Pa.R.C.P. 1915.8(a) (Physical and Mental Examination of Persons). Rule 1915.8 further provides that, unless otherwise directed by the court, the expert shall deliver "copies of any reports arising from the evaluation setting out the findings, results of all tests made, diagnosis and conclusions" to the court, attorneys of record for the parties, any unrepresented party, and the GAL and/or counsel for the child. Pa.R.C.P. 1915.8(b).

Rule 1915.8 is intended to address "the process for any number of expert evaluations a court may order in a custody case, including, but not limited to, physical, mental health, custody and/or drug and alcohol evaluations, and/or home studies." Pa.R.C.P. 1915.8 cmt. However, this Court has cautioned that although "Rule 1915.18 authorizes the trial court to order a party to custody litigation to submit to a mental health evaluation, the rule does not empower trial courts to compel parties to disclose their confidential information to their opponents." **M.M.**, 55 A.3d at 1172.

### Implicit Waiver of MHPA Privilege

First, we consider whether participation in a custody action constitutes implicit waiver of a party's confidentiality privilege under the MHPA.

- 9 -

Section 7111 of the MHPA provides that, absent certain exceptions, "[a]ll documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone." 50 P.S. § 7111(a); *see also Gates*, 967 A.2d at 1029 (stating that Section 7111 is "a broad provision that applies to all of the records concerning [a person's] mental health treatment"). This Court has held that the MHPA confidentiality privilege protects parties in a custody proceeding. *See Gates*, 967 A.2d at 1032; *see also M.M.*, 55 A.3d at 1177.

"Section 7111 does not explicitly state whether the protections it affords to mental health records can be waived." *Octave*, 103 A.3d at 1258-59. As such, this matter "involves the proper construction of a statute, for which our standard of review is *de novo* and scope of review is plenary." *Id.* at 1259 (citation omitted).

In *Octave*, our Supreme Court addressed the disclosure of confidential mental health records in the context of a personal injury matter. *Octave*, 103 A.3d at 1256-57. In that case, the husband sustained injuries after he was struck by a tractor-trailer. After the incident, the state police issued a report concluding that the husband had attempted to commit suicide. Thereafter, the wife filed a personal injury lawsuit seeking money damages on behalf of herself and her incapacitated husband. The defendants argued that the husband intentionally caused his own injuries by attempting suicide. To defend the case against them, the defendants requested access to the

husband's mental health records. The plaintiffs asserted the husband's privilege under the MHPA.[8]

In addressing plaintiffs' claim of privilege, our Supreme Court cited with approval the following statement made by this Court in **Kraus v. Taylor**, 710 A.2d 1142 (Pa. Super. 1998):

> We cannot believe that the Pennsylvania General Assembly intended to allow a plaintiff to file a lawsuit and then deny a defendant relevant evidence, at plaintiff's ready disposal, which mitigates defendant's liability. Rather[,] the General Assembly must have intended the privileges to yield before the state's compelling interest in seeing that truth is ascertained in legal proceedings and fairness in the adversary process.

**Octave**, 103 A.3d at 1260 (citations omitted). After discussing similar decisions in other jurisdictions, the High Court held that "a patient waives his confidentiality protections under the MHPA where, judged by an objective standard, he knew or should have known his mental health would be placed directly at issue by filing the lawsuit. **Id.** at 1262 (footnote omitted).

The **Octave** Court further concluded that there existed no "less intrusive means" to obtain the same type of information as contained in the husband's mental health records. The Court explained that because the husband ultimately died from his injuries, it was not possible to obtain information about his mental health through less intrusive alternatives, such as

---

[8] Notably, the husband later died from his injuries, but neither party asserted that the death affected the MHPA privilege. **Octave**, 103 A.3d at 1256 n.2.

interrogatories and independent psychological evaluations. *Octave*, 103 A.3d at 1263 n.10.

In *Gates*, we concluded that the mother did not waive her MHPA privilege in a custody matter, even where she failed to explicitly invoke the MHPA privilege and had previously agreed to release certain portions of her mental health records. *Gates*, 967 A.2d at 1030-1032. In reaching this conclusion, the *Gates* Court noted that the mother had consistently maintained that her records were confidential, which was sufficient to invoke her right to confidentiality under the MHPA. *See id.* at 1029-31.

Further, recognizing that a party's mental health was an important factor in custody proceedings, the *Gates* Court explained:

> Presuming [the f]ather's primary purpose in seeking the privileged documents was to ensure the existing custody order was in [the child's] best interest, we recognize that [the f]ather was entitled to place [the m]other's mental condition at issue in the custody proceedings. Nonetheless, less intrusive means exist for the trial court to make a determination as to [the m]other's suitability as a custodial parent, rather than releasing [the m]other's privileged mental-health records . . . and vitiating her statutory right of confidentiality. For example, [the f]ather can utilize [the m]other's testimony from the [custody] hearing to attempt to sustain his burden of proving modification is warranted, and if further inquiry into [the m]other's mental health is necessary, the trial court can order [the m]other to submit to a psychological evaluation pursuant to Rule 1915.8. However, [the m]other's mental health records are not subject to disclosure.

*Id.* at 1032.

The *Gates* Court also relied on our Supreme Court's decision in *Zane*, stating that "we acknowledge and cannot emphasize too strongly an

expectation of confidentiality in mental health records is critical to effective mental health treatment" and that a disclosure requirement would "not only violate [the] statutory guarantee of confidentiality, but would have a chilling effect on mental health treatment in general." *Id.* (citing *Zane v. Friends Hospital*, 836 A.2d 25, 33 (Pa. 2003)).

Further, the *Gates* Court rejected the father's assertion that *Zane* was inapplicable, "in part, because that case involves a civil dispute in tort rather than a custody matter, where consideration of the child's best interest is paramount." *Gates*, 967 A.2d at 1032. The *Gates* Court held that "the MHPA is equally applicable in a custody dispute as it is in a civil matter. . . . especially where, as here, less intrusive alternatives exist to determine the effect of a party's mental health upon the child's best interest." *Id.*

In *M.M.*, this Court reversed a trial court order that required the father, who suffered from a severe mental condition, to disclose his mental health records to the mother in a custody proceeding. *M.M.*, 55 A.3d at 1177. The *M.M.* Court concluded that the father did not waive his confidentiality rights during the course of litigation "by submitting to the court-ordered psychological evaluations, consenting to the deposition of his treating psychiatrist, [and] by authorizing the release of specific information to ensure his compliance with the ongoing treatment regimen." *Id.* at 1174. Further, we explained that because the MHPA privilege applied, "absent written consent or a finding of waiver, all of the documents relating to [the f]ather's

voluntary inpatient hospitalization . . . are privileged and are not subject to compelled disclosure." *Id.*

The *M.M.* Court explained that, although the father's mental health was relevant to the custody matter, the "alleged severity of [the f]ather's mental health concerns did not vitiate his expectation of confidentiality in his mental health records."[9] *Id.* Further, we emphasized that "less intrusive alternatives exist, such as an updated psychological evaluation pursuant to Rule 1915.8, to determine the effect of [the f]ather's bipolar personality disorder on his daughter's best interest." *Id.* at 1174-75. Therefore, we concluded that "[a]s the court-ordered psychological evaluation is the least intrusive means to determine how a parent's mental health condition will affect a child's best interest, it is the preferred method of evaluation." *Id.* at 1175 (citing *Gates*, 967 A.2d at 1032; *Zane*, 836 A.2d at 33).

In sum, both *Gates* and *M.M.* demonstrate that absent explicit waiver of the MHPA confidentiality privilege, a party's confidential mental health records are not subject to disclosure. This is especially true in custody cases, where "less intrusive means" exist to determine the effect of a parent's mental health upon a child's best interests. *See Gates*, 967 A.2d at 1032; *see also M.M.*, 55 A.3d at 1174. Further, both *Gates* and *M.M.* are consistent with our Supreme Court's decision in *Octave*, which recognized a limited exception

---

[9] We rejected the trial court's conclusion that *Gates* was distinguishable "due to the concern the trial court had with [the f]ather's mental health condition and because [the f]ather did not consistently assert that his mental health records were privileged." *M.M.*, 55 A.3d at 1174.

for finding implicit waiver under circumstances where the defendant was seeking mental health information about a deceased plaintiff that was unavailable through other means. Indeed, the ***Octave*** Court cited ***M.M.*** as an example of when disclosure of a party's mental health records was **not** appropriate when less intrusive alternatives, such as an updated psychiatric evaluation, for obtaining the same information existed. ***Octave***, 103 A.3d at 1263 n.10.

Here, in addressing Mother's waiver of the confidentiality privilege under the MHPA, the trial court explained:

> The confidentiality protections of the [MHPA] can be waived where, "judged by an objective standard, [a party] knew or reasonably should have known [their] mental health would be placed directly at issue by filing the lawsuit." ***Octave***, 103 A.3d at 1262. This [c]ourt notes that in filing his Petition for Emergency Special Relief, [Father] raised [Mother]'s mental health conditions and [Mother] raised [Father]'s mental health conditions in her responsive Petition for Emergency Special Relief. By filing custody petitions, both parties in this case knew or reasonably should have known that their own mental health would be placed directly at issue at a custody trial. A strong argument can be made that both parties placed their mental health directly at issue and waived confidentiality protections. However, the Supreme Court has urged that this form of implicit waiver of Section 7111 be applied with great caution.

Trial Ct. Op. at 12-13.

Based on our review of the record and the controlling case law, we conclude that ***Octave*** is distinguishable from the instant case. Here, as in all custody cases, the trial court had the authority to order a mental health evaluation under Rule 1915.8, which would provide information necessary to

- 15 -

determine the effect of a party's mental health on the child's best interest. **See Gates**, 967 A.2d at 1024; **see also M.M.**, 55 A.3d at 1174. Further, unlike in **Octave**, there were less intrusive means available for the trial court to obtain information about Mother's mental health without requiring her to disclose confidential mental health information. **See Octave**, 103 A.3d at 1263 n.10.

Reading **Gates**, **M.M.**, and **Octave** together, we conclude that a party's participation in a custody matter does not constitute implicit waiver of that party's confidentiality protections under the MHPA. **See Gates**, 967 A.2d at 1032; **see also M.M.**, 55 A.3d at 1174; **see also Octave**, 103 A.3d at 1262. This remains true even where one or both of the parties' mental health is placed at issue during the custody dispute.[10] **Gates**, 967 A.2d at 1032; **see also M.M.**, 55 A.3d at 1174. Therefore, we reiterate that absent explicit waiver, the parties' "mental health records are not subject to disclosure" in custody cases. **Gates**, 967 A.2d at 1032.

Accordingly, we conclude that Mother did not waive her MHPA confidentiality privilege by participating in the instant custody action, even though her mental state was at issue in the custody proceedings. **See Gates**, 967 A.2d at 1032; **see also M.M.**, 55 A.3d at 1174.

### Disclosure of Records to the GAL

---

[10] Indeed, the trial court is free to consider the mental health of the parties in any custody hearing, by virtue of Section 5328(a)(15) of the Child Custody Act. **See** 23 Pa.C.S. § 5328(a)(15) (stating that the judge must consider the "mental and physical condition of a party or member of a party's household").

We next address whether the trial court erred in ordering Mother to disclose her mental health records to the GAL. Here, the trial court concluded that Section 7111 of the MHPA conflicted with the role of the GAL set forth in Section 5334 of the Child Custody Act and the relevant Rules of Pennsylvania Civil Procedure. Specifically, the trial court explained:

> Section 5334 of the Child Custody Act and the form order set forth at Rule 1915.21 mandates that guardians *ad litem* obtain reports of examination of the parents or other custodian of the child and medical, psychological and school records. Section 5334 also does not expressly limit a guardian *ad litem*'s access to involuntary treatment records or voluntary inpatient records as provided in Sections 7103 and 7111 of the [MHPA]. In this circumstance where a party has [been] treated involuntarily or sought voluntary hospitalization for mental health, Section 5334 of the Child Custody Act conflicts with Section 7111 of [the MHPA].
>
> In analyzing this matter on [Mother's] petition for reconsideration, this [c]ourt attempted to avoid such a conflict by applying both Section 5334 and Section 7111 to the instant matter. Applying both statutes in this case, however, creates an absurd or unreasonable result. *See* 1 Pa.C.S. § 1922(1). If both statutes were applied here, the [GAL] would only be able to obtain records of the parties' voluntary outpatient treatment, which accounts for only a portion of the parties' mental health treatment. Such a limitation cannot serve [Child's] best interests where the mental health of both parties is at issue and one parent has an inpatient stay in her recent history that focused on alcohol abuse and a mental health diagnosis.
>
> If [Mother's] arguments regarding the broadness of Section 7111 carry the day in this matter, the work of the [GAL] in this high-conflict case would be frustrated because any report or recommendation relating to the best interests of Child would be made without the [GAL] knowing each parent's actual mental health diagnoses and treatment plan from their providers, whether that parent is following the treatment plan put in place, and anything from the records relative to the safety concerns as alleged by each party. Additionally, under Section 5334(b)(6), the [GAL] must also make recommendations for services

necessary to address the child's needs and safety, including specific types of counseling, therapy, parenting classes, or support groups for the parties. Mental health conditions are not the parties' fault, but they are the parties' responsibility moving forward. Without a clear picture, the [GAL] would be engaging in guesswork as to any services this family may need and what real safety concerns there are in this family for Child.

\* \* \*

"Whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail." "The Legislature has made clear [. . .] that tension between statutes enacted on different dates is generally to be resolved in favor of giving the greatest effect to [the] later-enacted provision."

Section 7111 of the [MHPA] was enacted on July 9, 1976[,] and made effective sixty days later. In 1996, Section 7111 was amended by P.L. 481, No. 77 and has remained effective as drafted since July 2, 1996. Section 5334 of the Child Custody Act was enacted on November 23, 2010[,] and made effective on January 24, 2011. Clearly, Section 5334 was enacted later in time and is to be given the greatest effect. . . .

Trial Ct. Op. at 12, 24-25, 31 (citations omitted).

A review of the trial court's analysis involves a question of law, namely, the proper construction and application of the statutes and rules.[11] Therefore,

_____

[11] Pennsylvania Rule of Civil Procedure 127 states:

(a) The object of all interpretation and construction of rules is to ascertain and effectuate the intention of the Supreme Court.

(b) Every rule shall be construed, if possible, to give effect to all its provisions. When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of a rule are not explicit, the intention of the Supreme Court may be ascertained by considering, among other

*(Footnote Continued Next Page)*

our review is *de novo* and plenary.  ***See Octave***, 103 A.3d 1255; ***Barrick v. Holy Spirit Hosp. of the Sisters of Christian Charity***, 32 A.3d 800, 808 (Pa. Super. 2011).

Both the Pennsylvania Rules of Civil Procedure and the Domestic Relations Code permit courts to appoint a GAL in a custody action.  ***See*** Pa.R.C.P. 1915.11-2; ***see also*** 23 Pa.C.S. § 5334.  "The function of the [GAL] is to represent and protect unrepresented minors and their interests."  ***C.W. v. K.A.W.***, 774 A.2d 745 (Pa. Super. 2001).

Of relevance to the instant case, Section 5334(b)(2) of the Child Custody Act provides that the GAL shall "be given access to relevant court records, reports of examination of the parents or other custodian of the child and medical, psychological and school records."  23 Pa.C.S. § 5334(b)(2). Further, the GAL must "[m]ake specific recommendations in a written report to the court relating to the best interests of the child, including any services necessary to address the child's needs and safety."  23 Pa.C.S. § 5334(b)(6).

Further, Rule 1915.21 establishes the form of a GAL order, including a provision that states:

matters (1) the occasion and necessity for the rule; (2) the circumstances under which it was promulgated; (3) the mischief to be remedied; (4) the object to be attained; (5) the prior practice, if any, including other rules and Acts of Assembly upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous history of the rule; and (8) the practice followed under the rule.

Pa.R.C.P. 127.

> It is ordered and decreed that all relevant schools, police departments, hospitals and social service agencies including home and school agencies who have records, reports and/or information pertaining to the child relevant to the custody of the child, shall allow the [GAL] access to all files and records in its possession, custody or control and shall cooperate in responding to all relevant inquires. These files/records may include but are not limited to medical, psychological or psychiatric charts including evaluations and progress notes and records, X-rays, photographs, tests, test evaluations, intake and discharge summaries, police records, and school records including report cards, educational assessments and educational plans, relevant to this custody dispute and/or relevant to any special needs or requirements of the child. The [GAL] shall have the right to copy any part of the files and records maintained in connection with the child.

Pa.R.C.P. 1915.21.

Despite the trial court's assertions to the contrary, we do not construe this case as a battle between the provisions of the Child Custody Act and the MHPA. Section 5334 of the Custody Act authorizes the GAL to access "reports of examination of the parents." 23 Pa.C.S. § 5334(b)(2). Given our prior decisions emphasizing the importance of confidentiality in mental health treatment and the trial court's authority to obtain the same information through a Rule 1915.8 mental examination, it is clear that these "reports of examination" are not meant to include a parent's confidential mental health records. *See Gates*, 967 A.2d at 1032; *see also M.M.*, 55 A.3d at 1174. Therefore, we disagree with the trial court that the GAL statute conflicts with the confidentiality protections set forth in Section 7111 of the MHPA.

Further, we conclude that the provisions relating to "medical, psychological and school records" refer to the records of the **child**, not the

parents. *See* Pa.C.S. § 5334(b)(2); *see also* Pa.R.C.P. 1915.11-2. Because the GAL is given access to all "reports of examination of the parents," a clear reference to the "physical and mental examination" described in Rule 1915.8, it would be unreasonable to conclude that the GAL would also need access to the parents' confidential medical or psychological records, let alone a parent's school records, which would have no relevance to determining the best interests of the child. Such a result would be unreasonable, as the practical effect would vitiate a party's right to privacy under both the MHPA and the Pennsylvania Constitution. *See* 1 Pa.C.S. §§ 1922(1), (3), 1921(c)(4).

Finally, we reject the trial court's contention that the GAL needed access to the Mother's confidential mental health records in order to make a recommendation about the child's best interests. The GAL, like the trial court, must consider numerous other factors in making this determination. *See* 23 Pa.C.S. § 5328(a), (a)(15); *see also T.B. v. L.R.M.*, 874 A.2d 34, 38 n.3 (Pa. Super. 2005) ("while psychiatric considerations may very well be important, they must not be made determinative"). In any event, because the same information about Mother's mental health could be obtained through less intrusive means, such as a court-ordered mental examination under Rule 1915.8, Mother's confidential mental health records are not subject to disclosure. *See Gates*, 967 A.2d at 1032; *see also M.M.*, 55 A.3d at 1174; *see also* 50 P.S. § 7111(a) (stating that a person's mental health records cannot be disclosed to anyone). Therefore, the trial court erred in ordering Mother to disclose her mental health records to the GAL.

## "Least" Intrusive Means Analysis

Lastly, we next consider whether the Custody Act provides for the "least intrusive means" of a sufficient mental health evaluation of the parent, or whether the trial court may order a limited disclosure of the party's mental health records. In its Rule 1925(a) opinion, the trial court reasoned that, although it ordered Mother to disclose portions of her mental health records, it did so "in a manner that respects both parents have concerns about the disclosure of their mental health history." Trial Ct. Op. at 27. Specifically, the trial court explained:

> On one hand, the [GAL] needs access to records to represent [Child]'s best interests and to make a statutorily-mandated report and recommendations to this [c]ourt. On the other hand, there appears to be over a decade of mental health treatment potentially available here, most of which does not necessarily encompass the present issues.

> Upon consideration of the incomplete testimony of the parties and [Mother]'s petition for reconsideration, this [c]ourt determined that access to the parties' records by the [GAL] should be limited to three years given [Mother]'s specific testimony that she began abusing alcohol at the end of 2016 and spent ten months in inpatient treatment for both alcohol abuse and an eating disorder in 2017. Moreover, during that inpatient treatment, [Mother] admitted that she overdosed on prescription medication. Given that drug and alcohol abuse and mental health conditions must be fully considered under 23 Pa.C.S. 5328(a)(14)-(15), disclosure of records is warranted in this case despite the broadness of Section 7111 of the [MHPA].

> Although disclosure of records was ordered, this [c]ourt did not permit the [GAL] full, unfettered access to the parties' mental health records in consideration of Section 7111. This [c]ourt also specifically limited the [GAL]'s ability to disseminate the records or the information contained therein and stated that the parties retained their ability to object to the [GAL]'s report or his

> testimony during the custody hearing. Furthermore, the [GAL] was precluded from sharing those records obtained with any party or with counsel.
>
> Additionally, this [c]ourt took an additional, extraordinary step to seal the trial court record *sua sponte* without objection from either party.

Trial Ct. Op. at 24-25.

As discussed previously, the MHPA prohibits the **disclosure** of a person's mental health records. **See** 50 P.S. § 7111(a). Further, as our decisions in **Gates** and **M.M.** make clear, it is the disclosure itself—not the scope of the disclosure or the alleged necessity of the information contained in the records—that vitiates a party's statutory right to confidentiality under the MHPA. **See Gates**, 967 A.2d at 1032 (concluding that the mother's privileged mental health records from one hospitalization were not subject to disclosure); **see also M.M.**, 55 A.3d at 1174 (stating that "the alleged severity of the mental health problem is not a permissible reason to compromise the privilege of confidentiality").

Further, the "less intrusive means" approved in custody cases is the evaluation provided in Rule 1915.8. **See M.M.**, 55 A.3d at 1174; **see also Octave** 103 A.3d at 1263, n.10 (citing **M.M.**, 55 A.3d 1167). Here, unlike in **Octave**, there is no indication that a court-ordered mental evaluation would

be insufficient to provide the trial court or the GAL with pertinent information about Mother's mental health.[12]

Therefore, the trial court erred by failing to utilize "less intrusive means" by ordering Mother to disclose her mental health records, regardless of the limitations it placed on the scope of the records or the GAL's ability to access and disseminate that information.  **See Gates**, 967 A.2d at 1032; **see also M.M.**, 55 A.3d at 1174.  Accordingly, we need not consider whether the Custody Act provides for the "least" intrusive means for obtaining information, such that a trial court could never compel disclosure of information protected by the MPHA.

**Conclusion**

In sum, we conclude that Mother's mental health records are absolutely privileged under the mandates of the MHPA, which requires a patient's "written consent" before those records are released or disclosed **to anyone**, except under limited circumstances inapplicable here.  **See** 50 P.S. § 7111(a). Further, in custody cases, such as this one, this Court has already determined that the same information available in a party's mental health records may be gleaned from a Rule 1915.8 evaluation; *i.e.*, a less intrusive means.  The MHPA and our precedents do not authorize the disclosure of Mother's mental health records in this custody case, even if limited to three years, and even if limited

---

[12] Indeed, the trial court's November 15, 2019 order included a requirement that both Mother and Father submit to a mental health examination under Pa.R.C.P. 1915.8.  **See** Trial Ct. Order, 11/15/19, at 2.

to access by the Child's GAL. *See Gates*, 967 A.2d at 1032; *see also M.M.*, 55 A.3d at 1174.

For these reasons, we reverse the portion of the October 29, 2019 order to the extent it provided the GAL with access to Mother's confidential mental health records. We also reverse the portions of the November 15, 2019 order that provided the GAL with access to Mother's mental health records from the last three years and ordered Mother to provide information about her mental health treatment to the GAL. We do not disturb the remaining portions of the trial court's orders.

Orders affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/26/2021