J-S07008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SUSAN LYNN ADAMS DIAZ | : | |
| | : | |
| Appellant | : | No. 184 MDA 2024 |

Appeal from the Judgment of Sentence Entered November 6, 2023
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001218-2021

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 10, 2025**

Appellant Susan Lynn Adams Diaz appeals from the judgment of sentence entered after a jury convicted her of one count of theft by failing to make required disposition of funds.[1]  On appeal, Appellant contends that the trial court erred by denying her omnibus motion as untimely, by failing to grant her Pa.R.Crim.P. 600 motion to dismiss, and by denying her motion for a mistrial.  After review, we remand so the trial court can conduct a more thorough Rule 600 analysis in a supplemental Rule 1925(a) opinion.

The trial court summarized the relevant facts as follows:

The York Revolution is a minor league baseball organization [that] is [also] involved with community events [such as] Bike Night where the team reaches out to the motorcycle community . . . . Bike Night is used to help support the York County Motor Fund, an entity that helps raise money for police motorcycles.  Typically, during the preceding winter months, the Revolution would seek a

---

[1] 18 Pa.C.S. § 3927.

sponsor for the event. In the Spring, an entity would give sponsorship money to the Revolution in exchange for benefits such as promotion, advertising, and tickets. After the event, a percentage of the ticket sales from Bike Night would be paid by the Revolution to the [York County] Motor Fund.

\* \* \*

[Clint Sheffer and Sue Renoll purchased the Laugerman Harley-Davidson dealership from Dave Laugerman in 2015 and renamed it First Capital Harley-Davidson.] In early 2016, [Appellant] approached First Capital to provide marketing services. She was hired as an independent contractor and served in that capacity for about 1.5 years.

Steve Stambaugh . . . [,]an attorney in the York area[,] was significantly involved in the motorcycle community, particularly with respect to charitable events. He was friends with Dave Laugerman and Sheffer.

Stambaugh met [Appellant] through First Capital in or about 2016.

Stambaugh was aware that [Appellant] handled the account for the [York County] Motor Fund.

Over the years, Stambaugh would co-sponsor various biker events, including the Revolution Bike Night, with both Laugerman Harley-Davidson and First Capital. Generally, the dealership would pay the full sponsorship fee for the Bike Night event directly to the Revolution and then Stambaugh would pay the dealership half of that amount. This was done with the understanding that a percentage of the ticket sales from Bike Night would be given to the [York County] Motor Fund by the Revolution.

Brandon Tesluk[,] the Director of Group and Hospitality Sales for the Revolution[,] was the person involved with organizing Bike Night during the period relevant to this prosecution.

In 2016, Tesluk, for the first time, worked with First Capital as the sponsor for Bike Night. Renoll introduced Tesluk to [Appellant], who was doing the marketing for First Capital. The sponsorship fee for that year was $ 2,500.

In 2017, the Revolution sought First Capital to sponsor that year's Bike Night for a fee of $2,950.00.

In 2018, [Appellant] offered to be the intermediary for Bike Night between First Capital and Stambaugh, on one hand, and the Revolution, on the other. She indicated to Sheffer that she was in charge of promoting Bike Night.

In September 2018, [Appellant] reached out to Tesluk to contract for the 2019 Bike Night event. On September 26, 2018, [Appellant], through her business entity Be Blonde, signed a Sponsorship Agreement with the Revolution for the 2019 event for [$]2,950.00. . . . The sponsorship sum was due to the Revolution by June 1, 2019. The agreement provided that Be Blonde would "receive first-right to renew this contract" until December 31, 2019.

On October 2, 2018, Stambaugh . . . and First Capital each gave [Appellant] a check payable to the [York County] Motor Fund in the amount of [$]1,500.00 . . . as part of the 2019 Revolution Bike Night event per a "contract" with Be Blonde. They expected that the money would be paid to the Revolution as was the case in all prior years.

*     *     *

The 2019 Bike Night event was held on July 27. First Capital and Stambaugh Law were advertised, and they received all of the expected amenities as part of the event.

On September 5, 2019, [Appellant] sent an email to Stambaugh, Sheffer and Renoll with a subject line of "2020 Bike Night with the Revolution." The email stated that "[t]he Revs just reached out to me about bike night for 2020. I hope we can count on your generous sponsorship again this year . . . They said that if I can confirm now, I can lock in the cost of $3,000.00 without an increase."

On September 9, 2019, [Appellant] approached Stambaugh in person to sponsor the 2020 York Revolution Bike Night. She presented him with a copy of the 2019 Be Blonde "contract" with the date "2019" crossed out and "2020" handwritten in its place. The document indicated that Stambaugh would receive 10 picnic tickets and be the "Naming right Sponsor." Camera ready artwork for signage and print advertising was due April 1, 2020, and the sponsorship payment payable to "YCMF" was due October 1, 2019. Stambaugh provided her a check that same day, as requested.

[Appellant] never paid the sponsorship fee nor [$972.00 for additional tickets she secured for 2019 Bike Night]. Throughout the Fall of 2019 the Revolution attempted to get payment from [Appellant] but was unsuccessful. As a result, the Revolution would not work with her for the 2020 event. Instead, in or about December 2019-January 2020, Tesluk approached First Capital and Stambaugh Law directly and learned that they had paid [Appellant] for the 2019 event.

\* \* \*

Detective [Anthony] Fetrow . . . obtain[ed] [Appellant's] personal and business (Be Blonde) bank records at the White Rose Credit Union as well as the records for the Motor Fund [pursuant to a search warrant]. An examination of those records revealed [that Appellant was the only signatory on each account, that she had transferred money from the York County Motor Fund account to her personal account and the business account of her then boyfriend, and that she had failed to transfer funds to the appropriate parties such as the York Revolution, First Capital and Stambaugh.]

Trial Ct. Op., 1/17/24, at 1-5 (formatting altered).[2]

On November 18, 2020, the police filed a criminal complaint against Appellant. Defense counsel entered his appearance and filed a waiver of arraignment on March 31, 2021. The Commonwealth filed a criminal information on April 13, 2021, the date originally scheduled for Appellant's formal arraignment.

Appellant's case then took a circuitous course through the trial court. Appellant filed a request for a bill of particulars on April 16, 2021. The Commonwealth responded to this request on April 22, 2021. Appellant then

_____

[2] We note that, because the trial court did not include an in-depth factual section in its Rule 1925(a) opinion, we have quoted the facts as set forth in the trial court's Memorandum Opinion, which was filed along with its order denying Appellant's Post-Sentence Motion.

filed an application to the court for an order for a bill of particulars on April 29, 2021. Appellant also filed a motion to quash and dismiss the information on May 19, 2021, and an omnibus pretrial motion on July 3, 2021 (Original Omnibus). The court denied Appellant's motion to quash on July 6, 2021. Thereafter, a suppression hearing was scheduled for September 15, 2021.

On September 15, 2021, Appellant filed a motion to continue the suppression hearing and for an extension of time to file a supplemental omnibus pretrial motion (Supplemental Omnibus). The court rescheduled the suppression hearing to October 12, 2021. Appellant filed the Supplemental Omnibus on October 6, 2021. At the beginning of the October 12 hearing, the trial court denied Appellant's Original Omnibus as untimely. *See* N.T. Mot. Hr'g, 10/12/21, at 12. The court then took testimony regarding the issues presented in the Supplemental Omnibus. *See id.* at 12, 19-20. However, during the testimony, it became clear that the Honorable Amber A. Kraft had close personal relationships with some of those involved in the case and recused herself at the conclusion of the hearing. *See id.* at 69-71. The Honorable Craig T. Trebilcock was assigned to take over the case on October 13, 2021. However, in November 2021, Judge Trebilcock and the rest of the judges sitting on the York County Court of Common Pleas were recused after an alleged victim in the case was elected to that court.

In December 2021, the Honorable John D. Kuhn, a senior judge on the Adams County Court of Common Pleas, was assigned to preside over the case. The Commonwealth filed a motion to schedule a status hearing on January

10, 2022. The court then scheduled, and subsequently held, a status hearing on April 27, 2022. Over the next several months, the trial court held two additional hearings on Appellant's Supplemental Omnibus and disposed of other outstanding motions. On September 7, 2022, the Court denied Appellant's Supplemental Omnibus.

On September 26, 2022, the court held a status hearing, which is memorialized in an order. *See* Trial Ct. Order, 9/26/22. At the conclusion of the hearing, the court, *inter alia*, noted that the Commonwealth proposed consolidation of three cases against Appellant, which Appellant opposed. *See id.* The court, therefore, set a briefing schedule directing Appellant to file a motion for severance within twenty-one days of receiving outstanding transcripts and directing the Commonwealth to respond to that motion within twenty days of receiving it. *See id.* The court also scheduled a status hearing for November 18, 2022. *See id.*

On November 17, 2022, Appellant filed a motion for severance and, on November 18, 2022, Appellant filed a motion seeking reconsideration of the order denying the Supplemental Omnibus. Also on November 18th, the court held the previously scheduled status hearing, which is memorialized in an order. Trial Ct. Order, 11/21/22. In that order, the trial court directed the Commonwealth to file a response to Appellant's motions for severance and for reconsideration. *See id.* The trial court also noted that "[t]he Commonwealth will be ready to proceed to trial . . . during January, 2023" and that the Commonwealth intended to join two other cases. *Id.* The court also set a

briefing schedule for two Commonwealth motions; one for joinder and one pursuant to Pa.R.E. 404(b). *See id.*

On February 1, 2023, the court denied Appellant's motion for reconsideration and noted that the Commonwealth had waived its opportunity to respond to the motion. On February 6, 2023, the court ordered that the above docket number be tried separately from the other two cases against Appellant. On February 13, 2023, the court held a pretrial conference, in which it ordered that jury selection would commence on April 17, 2023, and that Appellant's trial would commence on April 20, 2023.

On April 17, 2023, Appellant filed a motion for dismissal with prejudice requesting that Appellant's charges be dismissed because of a violation of Pa.R.Crim.P. 600. That same day, the trial court held a hearing on the motion and subsequently denied it.

On April 21, 2023, after a jury trial, Appellant was convicted of one count of theft by failure to make required disposition of funds.[3] The trial court sentenced Appellant to three to twenty-three months incarceration followed by twenty-four months of probation. Appellant timely filed a post-sentence motion, which the trial court denied on January 17, 2024. Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

---

[3] Defendant was acquitted of one count of receiving stolen property. *See* 18 Pa.C.S. § 3925(a).

On appeal, Appellant presents the following issues:

1. Whether the trial court erred by denying [Appellant's] omnibus pretrial motion as untimely when a contested bill of particulars was pending more than 30 days after arraignment, and it met other timeliness exceptions.

2. Whether . . . the trial erred by not dismissing this case pursuant to Rule 600 of the Pennsylvania Rules of Criminal Procedure (and the Pennsylvania and United States Constitutions).

3. Whether the trial court erred when it denied [Appellant's] motion for mistrial when the Commonwealth introduced evidence of crimes for which she was not on trial and precluded defense counsel's explanation of reasonable doubt to the jury.

Appellant's Brief at 3 (some formatting altered).

We address Appellant's Rule 600 issue first as it is dispositive to our decision. Appellant claims that the trial court erred by failing to dismiss the case pursuant to Pa.R.Crim.P. 600. Appellant's Brief at 3, 10-14. Appellant argues that the Commonwealth did not act with due diligence because at a November 18, 2022 status conference the Commonwealth stated that it would not be ready to proceed until January of 2023. *Id.* at 14. Defendant argues that the delay that followed the status conference was attributable to a lack of due diligence on the part of the Commonwealth. *Id.*

Our standard and scope of review of a trial court's denial of a motion to dismiss pursuant to Rule 600 is as follows:

In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is

- 8 -

overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

*Commonwealth v. Leaner*, 202 A.3d 749, 765-66 (Pa. Super. 2019) (citation omitted and formatting altered).

Rule 600 provides, in relevant part, "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). The Rule further states:

For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600(C)(1).

Generally, the Commonwealth must bring a criminal defendant to trial before the "mechanical run date," meaning within 365 days from the date upon which a written criminal complaint is filed. *Leaner*, 202 A.3d at 766.

Our Supreme Court has explained:

However, the Rule 600 run date may be adjusted pursuant to the computational directives set forth in Subsection (C) of the Rule. For purposes of the Rule 600 computation, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must

commence." [Pa.R.Crim.P. 600(C)(1)]. "Any other periods of delay," including those caused by the defendant, "shall be excluded from the computation." *Id.* When considering a Rule 600 motion, the court must identify each period of delay and attribute it to the responsible party, then adjust the 365-day tally to arrive at the latest date upon which the Commonwealth may try the defendant [("the adjusted run date")]. Absent a demonstration of due diligence, establishing that the Commonwealth has done everything reasonable within its power to guarantee that the trial begins on time, the Commonwealth's failure to bring the defendant to trial before the expiration of the Rule 600 time period constitutes grounds for dismissal of the charges with prejudice. *See* Pa.R.Crim.P. 600(D)(1).

*Commonwealth v. Barbour*, 189 A.3d 944, 947 (Pa. 2018) (some citations omitted and some formatting altered).

Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth. Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence.

*Commonwealth v. Martz*, 232 A.3d 801, 810-11 (Pa. Super. 2020) (citations omitted and formatting altered).

Where the trial court fails to make a finding as to whether the Commonwealth exercised due diligence in bringing the defendant to trial or fails to conduct a proper accounting of time, an appellate court should remand the case to the trial court to conduct a proper Rule 600 analysis. *See Commonwealth v. Selenski*, 994 A.2d 1083, 1089 (Pa. 2010) (stating that "[w]here the trial court failed to consider the evidence in the record as it

reflected on [the Commonwealth's] due diligence" that "the proper action [is] a remand to the trial court to determine whether the Commonwealth exercised due diligence pursuant to Rule 600"); *Commonwealth v. Malinowski*, 671 A.2d 674, 680 (Pa. 1996) (remanding back to the trial court to conduct a proper accounting of time under the predecessor to Rule 600); *see also Commonwealth v. Richardson*, 2572 EDA 2018, 2020 WL 1922515, at *5 (Pa. Super. filed Apr. 21, 2020) (unpublished mem.) (concluding that "[w]here a trial court has failed to conduct a proper due diligence analysis, the correct action for this Court to take is to remand for the trial court for such analysis" (citation omitted)).[4]

Here, Judge Kuhn denied Appellant's Rule 600 motion without placing any factual findings or legal conclusion on the record. *See* R.R. 99-100 (N.T. Mot. Hr'g, 4/17/23, at 43-44);[5] Trial Ct. Order, 4/17/23. The trial court's order states, "order denying motion" and provides that the "reasons [are]

---

[4] We may cite to non-precedential memorandum decisions filed by this Court after May 1, 2019 for their persuasive value. *See* Pa.R.A.P. 126(b).

[5] We note that the notes of testimony from the April 17, 2023 hearing are not included as part of the certified record, but they are included as part of Appellant's reproduced record. The Commonwealth did not object to the accuracy of these notes of testimony. Because "their veracity is not in dispute, we rely on the copy contained within the reproduced record." *See C.L. v. M.P.*, 255 A.3d 514, 518 n.3 (Pa. Super. 2021) (*en banc*); *see also Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012) (holding that an appellate court can consider a document that only appears in the reproduced record when "the accuracy of the reproduction has not been disputed" (citation omitted)).

stated on the record." Trial Ct. Order 4/17/23. However, at the conclusion of the Rule 600 hearing, the trial court stated:

> Listen, I'm not [going to] give you rhyme or reason. I can't say that I'm totally comfortable with calculations, but in my review of the motion filed today under Rule 600, it leaves me to the conclusion that whatever the run date is, we haven't gotten there yet. So[,] I'm going to deny the motion. I don't have any calculations to give you. Depending on how this whole thing plays out, it may or may not become an appeal issue, and we'll have to deal with it. I'll probably have to be doing some more intense calculations at some point.

R.R. 99-100 (N.T. Mot. Hr'g, 4/17/23, at 43-44).

While the trial court did eventually include some calculations and rationale for certain time periods in its Rule 1925(a) opinion, the opinion falls short of adequately assisting this Court with determining whether the Commonwealth acted with due diligence for the period from November 18, 2022 until January 2023, which Appellant specifically challenges on appeal. Furthermore, it does not assist this Court in determining whether the trial court considered this period excludable. The trial court's only discussion of this period in its Rule 1925(a) opinion is as follows:

> On September 26, 2022, the Court conducted a Status Hearing at which time the Commonwealth orally proposed consolidation of all three cases for trial between February and April 2023. Appellant was opposed to consolidation and orally moved for severance. She was directed to file a motion for severance within 21 days after receipt of the transcript of the hearing from August 8, 2022, so that her reasons were clearly stated. The Commonwealth was to answer that motion within 20 days after receipt.
>
> Another status conference was scheduled for November 18, 2022. Appellant filed her motion for severance on November 17. The following day she also filed a Motion For Reconsideration of the

Order denying her supplemental omnibus pretrial motion. That motion was denied on February 1, 2023. During the November 18 conference, the Commonwealth agreed to proceed to trial in the instant case in January 2023. The Court did not rule upon Appellant' s Motion For Reconsideration until February 1, 2023. By Order dated February 10, 2023, trial in the instant matter was scheduled to begin April 19. That schedule was modified slightly by Order dated February 13, 2023.

Trial Ct. Op., 3/1/24, at 7.

Therefore, the record does not contain any factual findings or legal determinations by the trial court regarding whether the Commonwealth acted with due diligence during the period Appellant challenges or whether this period was considered excludable time by the trial court judge. *See Barbour*, 189 A.3d at 947; *Leaner*, 202 A.3d at 766.

Additionally, the remainder of the trial court's Rule 600 analysis is unclear. The trial court stated the mechanical run date was November 18, 2021, and then began addressing excludable time. *See* Trial Ct. Op., 3/1/24, at 3-4. It then determined that various dates between November 30, 2020, and September 27, 2022, were excludable "due to court closure, Appellant's request for continuance or agreement." *Id.* at 4. However, in this section, the trial court did not assess any dates between September 27, 2022, and the date of the Rule 600 motion. *See id.*; *see also Commonwealth v. Dunmore*, 324 A.3d 1, 7 (Pa. Super. 2024) (stating that "when a Rule 600 motion is filed before trial commences . . . Rule 600 is examined as of the date the Rule 600 motion is filed."). At the end of the section, the court

concluded that the adjusted run date was November 30, 2022. *See* Trial Ct. Op., 3/1/24, at 4. However, the court then stated that:

> Jury selection was set for April 17, 2023, with testimony to commence April 20. Therefore, unless an additional 138 days could be excluded, Appellant's motion would have been granted. The [c]ourt was required to examine other periods separately to determine whether the Commonwealth was acting with due diligence in bringing this case to trial.

*Id* at 5. The court then conducted an analysis that combined due diligence determinations with date accounting. *See id.* at 5-7. However, this section is too vague to allow this Court to determine what additional days the trial court excluded or when the Commonwealth was acting duly diligent.

Given the state of the record, we decline to determine whether the Commonwealth acted with due diligence or whether the period between November 18, 2022 and January 2023 was excludable. *See Martz*, 232 A.3d at 810 (explaining that "[d]ue diligence is a **fact-specific** concept that must be determined on a case-by-case basis" (citation omitted and emphasis added)); *see also Commonwealth v. Shaw*, 247 A.3d 1008, 1017 (Pa. 2021) (reiterating that "[i]t is not an appellate court's function to engage in fact-finding" (citation omitted)); *but see Selenski*, 994 A.2d at 1089 (explaining that "the trial court[] failed to focus its inquiry on due diligence[,]" and the proper action is a remand for the trial court to conduct a proper due diligence analysis, but our Supreme Court declined to do so "[i]n the interest of judicial economy," and instead chose to "conduct a due diligence analysis in the first instance" based on the record).

- 14 -

Accordingly, we remand this case to the trial court to conduct a proper Rule 600 analysis. *See Selenski*, 994 A.2d at 1089; *Malinowski*, 671 A.2d at 680; *see also Richardson*, 2020 WL 1922515, at *5. Within sixty days of this Court's remand, the trial court shall file a supplemental Rule 1925(a) opinion with this Court providing a more thorough and clearer Rule 600 analysis. The trial court shall ensure that all time periods between the filing of the criminal complaint, on November 18, 2020, and Appellant's Rule 600 motion, on April 17, 2023, are analyzed. *See Dunmore*, 324 A.3d at 7. This analysis shall include whether the Commonwealth exercised due diligence during all pertinent periods and whether each delay was attributable to the court, the Commonwealth, or Appellant. *See Barbour*, 189 A.3d at 947. If the trial court is unable to conduct this analysis on the present record, the trial court may conduct additional hearings as necessary.

Case remanded with instructions. Jurisdiction retained.