**K.J.P., Appellee**

v.

**R.A.P., Appellant.**

Superior Court of Pennsylvania.

Argued March 5, 2013.
Filed May 22, 2013.

R.A.P., appellant, pro se.

Ann E. Endes, Wyomissing, for appellee.

BEFORE: BENDER, J., SHOGAN, J., and FITZGERALD, J.*

OPINION BY BENDER, J.

R.A.P. (Father) appeals *pro se* from the June 20, 2012 order that denied his exceptions to the Master's Report and Recommendation in which he claimed *inter alia* that the Master erred by failing to deduct from his 2010 income the net loss of $115,000 from the sale of property that Father used as his residence, thus, impacting the calculation of his income available for child and spousal support. We affirm.

█ The pertinent factual and procedural history of this case was gleaned from the trial court's opinion, dated September 13, 2012, its discussion and order, dated June 20, 2012, and documents and transcripts contained in the certified record. Father and K.J.P. (Mother) were married on February 16, 1984, and divorced on April 5, 2011. The parties stipulated that they separated on March 8, 2007. They are the parents of one child born in February of 1994. Mother filed a support action in 2007, seeking both child and spousal

---

* Former Justice specially assigned to the Superior Court.

support. Hearings were held before a Master, who issued a report and recommendation on February 6, 2012, that covered the time-period from March 8, 2007, to the present. It appears that the extended delay in issuing a final support order was caused by changes in the parties' incomes, changes in the custody of the child, and two appeals to this Court. *See Perry v. Perry*, 991 A.2d 368 (Pa.Super.2010) (unpublished memoranda); *Perry v. Perry*, 998 A.2d 996 (Pa.Super.2010) (unpublished memoranda). Of particular note are the numerous changes in Father's employment over the years, which caused his income to vary substantially.[1]

Following Husband's filing of exceptions to the Master's report and recommendation, the trial court entertained briefs and argument. One of Father's exceptions involved a date relating to one of his periods of employment. At argument before the trial court, the parties stipulated that the noted date was incorrect and agreed upon a corrected date. That exception is not at issue in this appeal. *See* Trial Court Opinion, 6/20/12, at 1. The other exception, which the court dismissed in its June 20th order, involved Father's claim that, when calculating his income for support purposes, the Master failed to include the loss Father suffered in the sale of his property in New Jersey. The trial court reviewed this issue briefly in its discussion accompanying its June 20th order, stating:

> The only issue before the [c]ourt, therefore, is whether the master properly excluded from Father's income the net loss he suffered at the time his [sic] sold the piece of real estate located in

New Jersey. While Father attempted to characterize this real estate as a commercial holding because he has regularly engaged in such activities, he acknowledged that he resided in the house up to the time he relocated to Canada for his job, at which point he sold the residence. In other words, regardless of how this property was held and regardless of the fact that Father has owned real estate for business purposes, this particular property was his primary residence.

Trial Court Discussion and Order, 6/20/12, at 1.

The court provided a much more in depth explanation of the factual basis underlying its decision in its Pa.R.A.P. 1925(a) opinion. The court acknowledged that the Master found the sale of the New Jersey property to be a sale of a personal residence, based on the following evidence of record:

> The Support Master heard evidence relating to the New Jersey Property, which is the subject of the within appeal. At the outset we note that real estate investing is not [Father's] primary source of income. Rather, since approximately 1990, [Father] has been employed by various high-tech electronics or telecom companies in various marketing and product development capacities. In addition to his full-time, corporate employment, [Father] has historically engaged in real estate investing. [Father] described this investment activity at the Master's hearing. Specifically, [Father] testified that he has "purchased, renovated, and resold proper-

1. Specifically, with regard to 2010, the year in question in this appeal, Father's net monthly income for the months of January through May was calculated at $28,538.15. From June 1, 2010, until August 23, 2010, Father's net monthly income was calculated at $2,441.12, because he had been laid off from his employment with Panasonic and was collecting unemployment benefits. For the remainder of 2010, Father's net monthly income was calculated at $23,660.99. *See* Master's Report and Recommendation, 2/6/12, at 5–6.

ties, as well as purchased, renovated, and rented properties," owning as many as 20 properties at a given time. He described himself as a house "flipper," and explained that, depending on the applicable tax rules and regulations, he has at times resided in his investment properties and at other times chosen to rent a home for himself while owning other properties, depending on the relevant tax implications.

When asked specifically about the New Jersey Property, [Father] testified that he used the house on 60 (unintelligible) Lane, "as my legal address" (this was apparently understood by all parties at the Master's Hearing to be the New Jersey Property). He further testified that he intended to purchase the New Jersey Property with a partner and to "invest money in it, renovate it, and sell it for a profit and generate positive income." There was no evidence that [Father] followed through with that plan. [Father] testified that at the same time he owned an investment property located in Pennsylvania, which was occupied by tenants. [Father] purchased the New Jersey Property on July 10, 2008. [Father] moved into the New Jersey Property in August or September of 2008, lived there, and moved out on August 23, 2010, when he relocated to Canada. Crucially, when questioned by the Hearing Master, [Father] acknowledged that the New Jersey Property was his primary residence for the approximately two-year period prior to [Father's] relocation to Canada.

Trial Court Opinion (T.C.O.), 9/13/12, at 2–3 (citations to the record omitted).

Based upon these facts, the definition of "income" in the Domestic Relations Code at 23 Pa.C.S. § 4302, and directives contained in the Support Guidelines at Pa. R.C.P. 1910.16–2(a)(2), the court determined that although Father had a history of "dealing in property," any proceeds he might have garnered from the sale of his home could not be considered "income" for support purposes and that a loss from the sale cannot be offset against other income, such as wages. Accordingly, the court dismissed Father's exception concerning the $115,000 loss he suffered from the sale of his residence and Father filed this appeal.

Father's central question deals with the treatment of the $115,000 loss he experienced when he sold the New Jersey property, however, he sets forth the following seven separate issues in his brief:

1. Did the Trial Court's Order [sic] abuse its discretion and/or misapply the law in not allowing the loss on investment real estate to be computed as a reduction in [Father's] income for the purposes of support?

2. Did the Trial Court err in its overall conclusion that a loss resulting from the sale of a residential investment property partially owned by [Father] was not a reduction in [Father's] income for the purposes of the calculation of support and its underlying argument is not consistent or in concert with Pa. Law, Precedent, Rules and Procedure?

3. Did the Trial Court err in concluding that the (*income/loss*) from sale of a primary residence is not income within the meaning of the Domestic Relations Code and[/]or [23] Pa.C.S.A. § 4302?

4. Did the Trial Court err in concluding that the tax treatment of such a loss under the U.S. tax code somehow had relevance with regard to its treatment of income for the purposes of support?

5. Did [the] Trial Court err in concluding that personal use of an investment asset that was later sold somehow exempts such gain or loss from being con-

sidered income for the purposes of support?

6. Did the Trial Court err in deliberating that the benefit of the tax treatment of certain expenses (property taxes and real estate interest) to [Father] relating to the property were germane, material or probative to its conclusion that the income/loss of a property is not income within the meaning of the Domestic Relations Code and[/]or 23 Pa.C.S.A. § 4302[?]

7. Did the Trial Court err in deliberating that the benefit of personal use by [Father] of the property was germane, material or probative to its conclusion that the income/loss of a property is not income within the meaning of the Domestic Relations Code and[/]or 23 Pa. C.S.A. § 4302[?]

Father's brief at 6–7.[2]

■■ We begin by setting forth our standard of review applicable to support cases:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by

the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*D.H. v. R.H.*, 900 A.2d 922, 927 (Pa.Super.2006) (quoting *Samii v. Samii*, 847 A.2d 691, 694 (Pa.Super.2004)).

*Mencer v. Ruch*, 928 A.2d 294, 297 (Pa.Super.2007).

The Domestic Relations Code (Code) defines "income" as follows:

> "Income." Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; **gains derived from dealings in property;** interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; in-

---

**2.** We are compelled to comment that Father has failed to comply with Pa.R.A.P. 2119(a), which states:

> The argument shall be divided into as many parts as there are question to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Although Father's organization of the argument section does not correspond with the issues presented and does not facilitate our review, "it does not impair our review to the extent that we would decline to address the issues on this basis." *Lemenestrel v. Warden*, 964 A.2d 902, 910–11 n. 5 (Pa.Super.2008). However, in light of the manner in which Father has discussed his various arguments, we address them together.

come tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S. § 4302 (emphasis added). We also note that Pa.R.C.P. 1910.16–2(a)(2), which references the definition of income in the Code, provides that "income" includes, but is not limited to "net income from business or dealings in property[.]"

Here, Father contends that the definition of "income" is encompassing, not exclusionary. Therefore, Father proposes that a net gain when one deals in property should be considered income for support purposes and, likewise, a net loss should also be instrumental in the calculation of income for support purposes. Father argues that the trial court erred in concluding that the sale of his primary residence does not constitute "dealing in property" under the Code and, therefore, that income from that sale should not be included in income for the purpose of calculating support or that a loss on the sale should not be set off against other income.

The trial court found that Father used the New Jersey Property as his legal residence and, therefore, despite Father's history of "dealing in property," the sale of that property could not be considered a loss of "income" under the Code or the Guidelines. The court particularly concluded that the sale of one's primary residence is not listed in the definition of "income" and, more importantly, the definition only includes "gains," making no mention of losses. The court further points out that the Guidelines identify "Monthly Gross Income" as including "net income from business or dealings in property" for calculating support, Pa.R.C.P. 1910.16–2(a)(2), and contemplates an offset of losses against gains from property, but does not allow for an offset of losses against any other income, such as salary,

which appears to be what Father is attempting to do here.

The court also addressed Father's complaint that it considered the Internal Revenue's treatment of the sale of his primary residence. The court explained that it discussed tax implications of the sale because both parties' attorneys raised the treatment of the sale under the tax laws. Moreover, the court noted Father's reference to *Darby v. Darby,* 455 Pa.Super. 63, 686 A.2d 1346 (1996), and *Flory v. Flory,* 364 Pa.Super. 67, 527 A.2d 155 (1987), to support Father's argument that the court should not consider the tax treatment of the sale when considering what should be included or omitted as to his income.

It is apparent that the court recognized that the tax definitions of income are not controlling with regard to defining income for support purposes. Moreover, the court was aware that "taxable income is not the same as net income used to determine support obligations." *Darby,* 686 A.2d at 1349. Specifically, the court pointed out that when filing his personal income tax return Father deducted real estate taxes and mortgage interest that he paid on the New Jersey Property, which is a tax benefit available only for a primary residence. However, the court explained that this was only one of many factors it considered in reaching its conclusion to deny the loss as against other income.

In *Darby,* the appellant received a lump sum settlement of a personal injury claim, which the trial court deemed to be income available for child support. The *Darby* court's opinion provides some general statements about the interpretation of the definition of "income" in section 4302, stating:

Statutory interpretation requires that words and phrases be accorded their plain meaning. *See* 1 Pa.C.S. § 1903. Thus, the types of income listed in 23 Pa.C.S. § 4302 are examples of income

available for support; the list plainly is not intended to be all-inclusive. Moreover, actual earnings are not necessarily utilized; courts are required to determine ability to pay from all financial resources in determining earning capacity. *See Blaisure v. Blaisure,* 395 Pa.Super. 473, 577 A.2d 640 (1990) (earning capacity includes money from all sources, not just actual earnings). *Darby,* 686 A.2d at 1348.

Although the court did not discuss with particularity Father's earning capacity or sources of funds beyond Father's salary, it is evident that Father's income available for support over the years from 2007 through 2011, encompassed in the June 20, 2012 order, did not include profits from Father's "house flipping" activities. We therefore assume that any profit made on these types of dealings in property were not included as income for support purposes, even if those sums should have been included.[3] Moreover, the definitions contained in the Code and in the Guidelines contain references only to "net gains" from dealings in property, do not include the sale of a party's residence, and only allow an offset against gains from dealings in property, not an offset against any other source of income. Accordingly, we conclude that the court did not abuse its discretion in ruling that the loss on the sale of the New Jersey Property was not a loss of income for purposes of calculating Father's support obligation. We, therefore, affirm the June 20, 2012 order.

Order affirmed.

---

**3.** The Master's Report and Recommendation noted Father's activities as a " 'real estate investor' for 28 years." Master's Report and Recommendation, 2/6/12, at 7. The Master further found that Father "currently owns an interest in homes located in Northern Pennsylvania and Huntington Beach, California. The homes are rented (no evidence was presented regarding income/loss associated with [these] homes)." *Id.*