J-S03016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| THOMAS I. MOSER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROSALEE A. KNAUB | : | No. 1087 MDA 2023 |

Appeal from the Order Dated June 27, 2023
In the Court of Common Pleas of Dauphin County Domestic Relations at
No(s):  989 DR 15
PACSES NO. 259115394

BEFORE:  OLSON, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: MAY 8, 2024**

Thomas I. Moser (Father) appeals from the order denying his petition for a modification of child support based on a change in Appellee Rosalee A. Knaub's (Mother) income resulting from the sale of real estate.  Father argues that the trial court abused its discretion when it held that proceeds from Mother's sale of real estate did not constitute income for purposes of calculating child support.  After review, we affirm.

The trial court set forth the following factual history:

[Father and Mother] share one minor child, G.M. [(Child)].  Father filed a petition to modify a non-financial order on February 11, 2022.  The initial non-financial order was dated April 9, 2020, based upon Mother's inability to work due to medical limitations. A conference was held on April 11, 2020, at which time Mother produced a physician's verification form that she was evaluated by her physician and that her medical condition limited her ability to work from January 21, 2022, through January 21, 2023.  [] Mother had applied for social security disability benefits and was

denied. She had appealed that decision and it was still pending as of date of the hearing *de novo*. Mother last worked full-time in 2012.

Father's counsel contended that Mother was pursuing custody reunification with [Child] and that her ability to have increased custody reflected directly on her ability to work and provide child support to Father. The conference officer determined that Mother was still unable to work and recommended that the non-financial order of April 9, 2020, remain in effect.

At the hearing conducted by the [trial court], Mother appeared with counsel and testified credibly that she was still unable to work due to her medical conditions. Mother is 44 years old and is in very poor health. The conditions described by Mother as contributing to her poor health and inability to work are that she suffers from migraines, has three bulging discs in her neck, degenerative disc disease, Barrett's Syndrome (causes acid reflux), endometriosis and mitosis, fibromyalgia, bilateral osteoarthritis in her knees, and post[-]traumatic stress disorder (PTSD). She has at least two doctor's appointments per week, is seen by as many as four doctors, and is on six maintenance medications per day. She's a Medicaid recipient. She last worked full time in 2012 at a call center for a propane company, however she worked part time babysitting her nephews, ages 9 and 12, for six hours a week in 2018. Her health has steadily deteriorated since. No vocational expert was retained by Father. Father relied upon Mother's cross-examination and his exhibits submitted to the [trial court].

Mother has a history of mental health illness and a poor relationship with her daughter, G.M., the subject minor child of the support appeal. From Father's Exhibit 5 at [the] hearing, the [trial court] gleaned that Mother has been diagnosed with PTSD. Further, that Mother has required reunification therapy with [Child] since 2018. In fact, Mother's mental health issues were so concerning that another judge of [the Dauphin County Court of Common Pleas] ordered that she continue with intensive outpatient psychotherapy and that if she "[fails] to meet her therapeutic and supervisory goals [it may] result in the [trial court] entertaining a permission for termination of parental rights by Father []." There was also an indication of parental alienation caused by Father. Father was seen as having "passive-aggressive" behavior toward Mother.

Mother received a gift of real estate in 2011 from her parents prior to their deaths. It was her primary dwelling, but she admittedly was not sleeping there for the last two years due to living conditions. At the time of acquisition by her parents the real estate had a value of $33,900.00. Mother's parents transferred the real estate on June 2, 2011, for a dollar. Mother later sold the real estate on June 15, 2021, for $130,000.00 to a third party. Mother received $118,000.00 in proceeds from the sale and used those proceeds to reinvest in a new home, pay medical expenses, and legal fees. Mother admitted during cross-examination that all checks issued to pay her debts were in the form of reimbursements to Marc Hummel, her current fiancé.

Trial Ct. Op., 9/25/23, at 1-3 (citations and footnote omitted and some formatting altered).

On April 26, 2022, the trial court, on the recommendation of a conference officer, entered an order denying Father's petition to modify the child support obligations set forth by the April 9, 2020 order. Father filed an appeal from the conference officer's findings with the Court of Common Pleas. An evidentiary hearing was held on September 29, 2022, and on June 27, 2023, the trial court ultimately entered an order denying Father's appeal and affirming the April 26, 2022 order.

Father filed a timely notice of appeal on July 27, 2023. The trial court ordered Father to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Father timely complied. The trial court filed an opinion addressing Father's claims.

Father raises the following issue on appeal:

Did the [trial] court err [in] failing to find that the proceeds from the sale of real estate given to her before [] Child was born was income for support, in whole or in part?

- 3 -

Father's Brief at 5.

In his sole issue on appeal, Father contends that the trial court erred in concluding that the proceeds from the sale of Mother's house was not considered income for the purposes of calculating her child support obligations. *Id.* at 9. Specifically, Father argues that although the house was a gift from her parents, "once it was liquidated and a gain was secured from the gift, that gain [was] income, and must be used to help support [Child.]" *Id.* at 16. Father also contends that "[a]t some point in time, a gift of real estate should be deemed as converted into a 'dealing in property'" under Pa.R.C.P. 1910.16-2(a)(2), "especially when the property has essentially been abandoned as her residence for two years in favor of residing with her fiancé." *Id.* at 16-17.

Our standard of review is as follows:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*Summers v. Summers*, 35 A.3d 786, 788 (Pa. Super. 2012) (citation omitted).

Additionally, this Court has explained that this Court

- 4 -

must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first[]hand.

When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, and the court is free to choose to believe all, part, or none of the evidence presented. This Court is not free to usurp the trial court's duty as the finder of fact.

*Mackay v. Mackay*, 984 A.2d 529, 533 (Pa. Super. 2009) (citations omitted and formatting altered).

"Generally, the basic child support . . . obligation is based on the parties' monthly net incomes." Pa.R.C.P. 1910.16-2. "Monthly gross income is ordinarily based on at least a six-month average of a party's income. The support law, 23 Pa.C.S. § 4302, defines the term 'income' and includes income from any source." Pa.R.C.P. 1910.16-2(a). Further, Section 4302 defines income as follows:

**"Income."** Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or

settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S. § 4302; **see also** Pa.R.C.P. 1910.16-2(a)(2) (stating that "net income from business or dealings in property" is a type of income).

This Court has explained:

Statutory interpretation requires that words and phrases be accorded their plain meaning. Thus, the types of income listed in 23 Pa.C.S. § 4302 are examples of income available for support; the list plainly is not intended to be all-inclusive. Moreover, actual earnings are not necessarily utilized; courts are required to determine ability to pay from all financial resources in determining earning capacity.

**K.J.P. v. R.A.P.**, 68 A.3d 974, 979-80 (Pa. Super. 2013) (citations omitted).

Our Supreme Court has held that proceeds from an inheritance are excluded from income when calculating an individual's support obligations.[1] **Humphreys v. DeRoss**, 790 A.2d 281, 287-88 (Pa. 2002). In reaching that conclusion, the **Humphreys** Court noted that an inheritance is not a type of compensation for services and is therefore excluded from the definition of "income." **Id.** at 284-88. Further, the Court reiterated that an "intact family" would more likely use an inheritance for savings, investment or capital purchases rather than for daily living expenses, and that "[t]herefore, considering the entire inheritance as income available for support is contrary to the purposes of the support guidelines." **Id.** at 286 (citation omitted).

---

[1] The **Humphreys** Court also noted that if a fact finder determines that inheritance proceeds "affects a payor's financial obligations by making more income available for support, an upward deviation is appropriate." **Humphreys**, 790 A.2d at 288.

- 6 -

This Court has also held that because "[a] gift is not given in exchange for services, [] it does not fit into the statutory definition of income[]" and therefore, a gift "cannot be considered in the calculation of income for support purposes." *Jacobs v. Jacobs*, 884 A.2d 301, 307 (Pa. Super. 2005); *see also Ashley v. Ashley*, 393 A.2d 637, 639 (Pa. 1978) (stating that an *inter vivos* gift must contain two elements: "(1) an intention to make an immediate gift, and (2) such actual or constructive delivery to the donee as will divest the donor of dominion and control of the subject matter of the gift" (citations omitted)). However, a gift may be considered as a reason for deviating from a guideline amount of child support. *See Jacobs*, 884 A.2d at 307.

Finally, this Court has explained that "the definitions contained in the Code and in the [child support g]uidelines contain references only to 'net gains' from dealings in property, do not include the sale of a party's residence, and only allow an offset against gains from dealings in property, not an offset against any other source of income." *K.J.P.*, 68 A.3d at 980. Therefore, the sale of one's residence is not considered income for purposes of calculating a party's child support obligations. *Id.*; *see also Smedley v. Smedley*, 2024 WL 1365988 at *5 (Pa. Super. filed April 1, 2024) (unpublished mem.)[2] (explaining that the trial court credited the wife's testimony that she could no longer afford to live in the marital residence and concluding that because the wife used the proceeds from the sale of her residence to pay off the mortgage

---

[2] We may refer to this Court's unpublished memoranda filed after May 1, 2019 for their persuasive value. *See* Pa.R.A.P. 126(b).

and purchase a new primary residence, she was not left with any "net gain" resulting from the sale that could be considered income for purposes of support calculations).

Here, the parties do not dispute that the house itself was a gift which is excluded from income for purposes of calculating Mother's support obligations. **See** N.T. Hr'g, 9/29/22, at 26, 28; **see also Jacobs**, 884 A.2d at 307. The sole issue is whether the trial court erred in concluding that the proceeds from the sale of Mother's home were not considered income.

At the support hearing, Mother testified that she sold the house in June of 2021 for $118,000.00. The majority of the proceeds Mother received from the sale of the house went toward a new residence for herself and Child, medical expenses, and legal fees. **See** N.T. Hr'g, 9/29/22, at 29. Mother testified that she sold the home because she was no longer able to afford it. **Id.** at 29-30. Specifically, Mother testified that the house had been on the tax sale list at least three times, that she had to borrow money to pay the taxes and that she was unable to afford to maintain the house. **Id.** at 30. Mother additionally testified that she has over $20,000 in debt. **Id.** Mother described the house as follows: "I wasn't sleeping there, but it was my primary residence, and all of my belongings were in the home. The home was unlivable until right before it was sold because the pipes had broken." **Id.** at 37.

In determining that the proceeds from the sale of Mother's house did not constitute income, the trial court explained:

First, the statute does not identify a gift as income for support purposes. Here, Mother received the real estate from her parents without consideration. That is the very definition of a gift. Secondly, Mother was not accruing any interest in the gift that was not simply assessed by Mother. Real estate may accrue value over time; however, such accrual is not income that is readily accessible. Mother was losing value in the home due to a lack of upkeep and failure to pay taxes. Finally, Mother was not engaged in the business of dealings in property. This was one piece of real estate that she held onto in the hopes of renovating it and using it as her primary dwelling. Accordingly, we find Father's argument on this issue unavailing.

Trial Ct. Op. at 7 (citations omitted and formatting altered).

Based on our review of the record, we discern no abuse of discretion by the trial court. *See Summers*, 35 A.3d at 788. In reviewing the trial court's conclusions, we must afford the trial court great deference to its factual findings that are competently supported by the record. *See Mackay*, 984 A.2d at 533. Here, as noted by the trial court, Mother received the house at issue as a gift from her parents. *See Ashley*, 393 A.2d at 639; *see also Jacobs*, 884 A.2d at 307 (noting that a gift is not considered income for purposes of support calculations). Although Mother subsequently sold the house, the proceeds from the sale of her residence did not constitute income. *See K.J.P.*, 68 A.3d at 980 (explaining that for purposes of calculating support obligations, income does not include proceeds from "the sale of a party's residence"). Finally, the trial court credited Mother's testimony that she used the $118,000.00 from the sale of the house to reinvest in a new home and to pay medical expenses and legal fees. *See* Trial Ct. Op. at 6. Therefore, Mother was not left with any "net gain" from the sale of the house that could

be considered income for purposes of calculating her child support obligations. *See Smedley*, 2024 WL 1365988 at *5. For these reasons, Father is not entitled to relief. Accordingly, we affirm.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/08/2024