J-S29019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TERRA LYN HEFFLEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SEAN WILLIAM HEFFLEY | : | No. 1084 WDA 2024 |

Appeal from the Order Entered August 8, 2024
In the Court of Common Pleas of Allegheny County
Family Court at No(s):  FD19-009308-015,
PACSES No. 803117888

BEFORE:  NICHOLS, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.:                    **FILED: June 24, 2026**

Terra Lyn Heffley ("Mother") appeals from the trial court's order directing Sean William Heffley ("Father") to pay child support in the amount of $1,375 per month for their four minor children.  We reverse and remand for a determination of Father's income for the purposes of assessing child support.

In 2019, Husband filed a complaint for shared custody and a complaint for divorce.  In October 2021, the court granted the divorce decree.  Petitions for custody and under the Protection From Abuse Act ("PFA") ensued, as well as Mother's prior appeal to this Court of a custody ruling.

Master's hearings on child support commenced in 2020.  At the first hearing, Robert Zahner ("Mr. Zahner"), an expert in valuation, testified he evaluated Father's 2019 and 2020 net disposable income, including, *inter alia*, his salary as a sales engineer at LogRhythm and his rental income from eight

non-marital rental properties. *See* N.T., 9/3/20, at 3-6. Mr. Zahner estimated Father's net monthly income as $22,746 for 2019, and $16,146 for 2020.[1] *See id*. at 17-18.[2] At the time of the September 2020 hearing, Mother was not working because she and Father had agreed she would not work until the youngest child reached kindergarten. *See id*. at 42-44. Celia Evans ("Ms. Evans"), an expert in vocational assessment and counseling, testified Mother's earning capacity was $55,868. *See id*. at 51-59.

Father testified some of the non-marital property is owned with his brother and his expenses relating to those properties include management fees; Father also expected to receive less rental income in 2020 than in 2019. *See* N.T., 9/19/20, at 30-53. Father testified he wanted all the children to be in school but admitted on cross-examination that he agreed the children could be virtually schooled due to concerns about COVID-19. *See id*. at 55-56, 83-85.

By order dated August 5, 2021, Father was required to pay $4,042 per month in support, $1,500 of which was alimony. Father filed a petition for

_____

[1] At a later hearing, Father testified temporary pay cuts occurred during COVID but his employer later reinstated his full salary. *See* N.T., 3/7/23, at 46.

[2] Father's full pay was later reinstated. *See* N.T., 9/19/20, at 87.

modification in November 2022. On March 7, 2023, a hearing officer conducted a hearing on Father's petition.[3]

At the March 2023 hearing, Father's attorney stated Father's Pennsylvania income for 2020 was $237,730. **See** N.T., 3/7/23, at 5. Counsel stated Father's wages were approximately $253,522 in 2021. **See id**. Counsel additionally stated Father left his job at LogRhythm in mid-2022[4] for a job at Netskope, hoping to increase his income, and earned approximately $260,000, but did not have a salary after he was laid off from his job at Netskope in November 2022. **See id**. at 5-6. Counsel stated Father began receiving $594 in unemployment insurance in February 2023. **See id**. Counsel further stated because of refinancing, Father was not receiving rental income. **See id**. at 6-7. However, the evidence at the March hearing showed that, on February 14, 2023, prior to the hearing, Father was again gainfully employed as a senior sales engineer for D3 Security, with a base salary of $186,000 plus commissions. Father also testified he received his first paycheck from D3 Security. **See id**. at 8-9.[5]

_____

[3] Although Mother failed to ensure the presence of this transcript in the certified record and simply included it in her reproduced record, we may consider it because Father has raised no objection to its accuracy. **See C.L. v. M.P.**, 255 A.3d 514, 518 n.3 (Pa. Super. 2021) (*en banc*); **Layton-Herron v. Litke**, 352 A.2d 510, 515, n.1 (Pa. Super. 2026).

[4] Father later testified he left that job voluntarily. **See id**. at 37.

[5] Father testified at D3 Security, he will earn a 3% commission on all sales with no cap and will be vested with equity after one year. **See id**. at 40-41.

Father also testified he paid $650 per month to the secretary who managed his property; he claimed he spent $23,000 in 2023 on roof repairs for five of the properties, and $12,000 to repair pipes in 2022. *See id*. at 10-13. He testified he expected his net profit from rentals for 2022 would be between $10,000 and $20,000. *See id*. at 15.

Mother testified about the cost of music lessons for the Children, fees for sports activities, and a surgery for one of the Children she had to pay for because insurance had lapsed. *See id*. at 57-59, 61. Mother also testified Father had not paid any support since December of the prior year. *See id*. at 59. At the conclusion of the hearing, the hearing officer stated, "I will get a recommendation out in the mail." *Id*. at 63.

In March 2023, the hearing officer determined Mother's earnings were $44,900 and recommended that retroactive to November 23, 2022, Father pay, *inter alia*, $1,375.09 per month in child support, plus $175 per month toward his arrears of $3,255.64. The hearing officer based his assessment of Father's income on unemployment compensation and rental income. In June 2023, Mother filed exceptions to the hearing officer's recommendation. *See* The trial court denied Mother's exceptions. *See* Order, 8/5/24.

Mother filed a timely notice of appeal. The trial court did not order Mother to file a Rule 1925(b) statement, and Mother did not file one. The court filed an opinion on April 1, 2025.

On appeal, Mother presents the following issues for our review:[6]

A.      The trial court erred in failing to hold [Father] to an earning capacity based on his prior actual earnings.

B.      The trial court erred in calculating [Father]'s income[] as he had obtained new full-time employment.

Mother's Brief at 8 (capitalization standardized).

Mother's first issue asserts that the trial court failed to state the reasons for its assessment of Father's earning capacity and that Father voluntarily left a higher paying job, which should not lower his assessed earning capacity. *See* Mother's Brief at 15-19.

This Court's standard of review in matters concerning child support orders is as follows:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground.  We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order.  An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.  In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

***K.J.P. v. R.A.P.***, 68 A.3d 974, 978 (Pa. Super. 2013) (citation omitted).  Child support "is a shared responsibility requiring both parents to contribute to the

---

[6] In violation of Pa.R.A.P. 2116, Statement of Questions Involved, Mother fails to state her issues as questions and fails to state whether the trial court agreed or disagreed with each issue.

support of their children in accordance with their relative incomes and ability to pay." ***Kersey v. Jefferson***, 791 A.2d 419, 423 (Pa. Super. 2002). ***See also Sichelstiel v. Sichelstiel***, 272 A.3d 530, 534 (Pa. Super. 2022) (stating the "duty to support one's child is absolute," and noting child support awards are calculated using specific statutory guidelines that account for a parent's ability to pay and the reasonable needs of the particular child).

A support obligation is subject to modification based on a showing of changed circumstances. ***See Morgan v. Morgan***, 99 A.3d 554, 557 (Pa. Super. 2014). The trier of fact must adjust a party's net monthly income for "substantial continuing involuntary decreases in income due to an employment situation over which the party has no control[.]" Pa.R.Civ.P. 1910.16(d)(2)(i). After it assesses a party's earning capacity, a trier of fact is required to state the reasons for the assessment in writing or on the record. ***See*** Pa.R.Civ.P. 1910.16-2(d)(4)(i). This Court cannot infer a factual finding from a hearing officer's silence, at a hearing or in a written report, about a point in contention in a support hearing. ***See Sichelstiel***, 272 A.3d at 537.

The trial court's opinion is less than two pages long, restates the recommendation the hearing officer made after the hearing, and does not address either of Mother's claims. ***See*** Opinion, 4/1/25. In its two substantive paragraphs, the opinion recites that the hearing officer based Father's income on the amount he received in unemployment compensation and his rental income and that the hearing officer determined the support amount on that

basis. *See id*. at 1-2. Neither the hearing officer nor the opinion mentioned Father's new job that he had clearly started before the hearing occurred or discussed the basis on which Father left his previous job.

Mother recites the factors used to determine earning capacity pursuant to 23 Pa.C.S.A. § 1910.16-2(d)(4) and highlights the language permitting a court to impute an income when a party fails to obtain or maintain appropriate employment. *See* Mother's Brief at 15. She faults the hearing officer for failing to provide an earning capacity analysis or state the reasons for its assessment of Father's income. *See id*. at 17-18. Father responds that he changed jobs within the same field hoping for a better opportunity, the rules then in effect for determining income allowed adjustments for lay-offs, he obtained a new job prior to the hearing, and he "credibly testified" his Netskope employment was terminated. *See* Father's Brief at 5-8. Father further asserts the trial court properly found his loss of income was due to a lay-off. *See id*. at 8. He cites a non-precedential opinion of this Court stating that a monthly income will only be imputed after a court finds a willful failure to find or maintain employment. *See id*. at 10-13.

The trial court erred by adopting the hearing officer's recommendation without discussion or analysis. Although Father asserts he gave credible testimony, the hearing officer made no credibility determination – it ended the hearing with no factual findings and then issued an order basing Father's income on the amount he received in unemployment compensation minus

expenses related to real estate, without considering that the Father had recently been employed making a base salary of $186,000. The hearing officer's brief report, mailed to the parties on March 28, 2023, makes no reference to Father's new job and new income. As in **Sichelstiel**, we cannot infer a factual finding from a hearing officer's silence, at a hearing and in a written report, about a point in contention in a support hearing. **See Sichelstiel**, 272 A.3d at 537. Thus, we cannot assume the hearing officer made a finding that Father was credible, nor can we make any determination about the hearing officer's decision not to include Father's income from his new/current job.

In her second issue, Mother asserts the trial court erred in calculating Father's income because he had a new job as of February 14, 2023, at a salary of $186,000 per year, and presented a pay stub for that employment at the hearing. **See** Mother's Brief at 20-21. Father asserts that although he had a new job, his commission "which was a large part of his income," was not yet certain. Father's Brief at 14. He further claims Mother should not have filed exceptions from the hearing court's order because an order of support is effective from the date of the filing of the complaint or petition for modification unless the order specifies otherwise. **See** Father's Brief at 15, citing Pa.R.Civ.P. 1910.17.

Here, the hearing court's order – which the trial court cited without any analysis does not make any finding concerning Father's credibility.

Additionally, Mother did not request that Father's income be applied retroactively to the time of his unemployment, rendering Pa.R.Civ.P. 1910.17 inapposite, and would not be entitled to such an award pre-dating Father's beginning his new job in February 2023.

Most significantly, the hearing court did not take any account of the fact Father had a new job at an annual salary of $186,000, even without commissions. Instead, the hearing officer used Father's unemployment income to assess Father's income in determining child support. That was legal error.

We recognize a significant period has passed since the March 7, 2023, hearing and the trial court's April 1, 2025, Opinion, and that Father's and/or Mother's incomes may have changed. We hold only that the court erred in awarding child support based on Father's unemployment income from November 23, 2022, when Father was unemployed until February 14, 2023, when Father began working again at a job that paid him $186,000 even without commissions starting in February 2023. We remand for a new hearing for the trial court to make the following determinations: (1) whether Father's decision to leave his job at LogRhythm constituted a willful failure to maintain appropriate employment, (2) whether Father's termination at Netskope constituted a willful failure to maintain appropriate employment, (3) what amount, if any, Father owes Mother in child support for the period between the termination of his Netskope employment in November 2022, and his

employment by D3 Security in February 2023, (4) and a determination of Father's and Mother's income and any money Father owes Mother in Child support for the period from February 14, 2023, until the date of the hearing, and (4) a determination of Father's future child support obligation based on current employment.

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

6/24/2026