J-S44013-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1688 EDA 2024 |

Appeal from the Order Entered May 29, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000713-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1689 EDA 2024 |

Appeal from the Decree Entered May 29, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000165-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: C.E.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1690 EDA 2024 |

Appeal from the Order Entered May 29, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000714-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: C.E..H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-S44013-24

|   |   |   |
|---|---|---|
|   | : |   |
|   | : |   |
|   | : |   |
| APPEAL OF: P.H., FATHER | : |   |
|   | : |   |
|   | : |   |
|   | : |   |
|   | : |   |
|   | : | No. 1691 EDA 2024 |

Appeal from the Decree Entered May 29, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000166-2024

BEFORE: NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY NICHOLS, J.: **FILED FEBRUARY 11, 2025**

P.H. (Father) appeals from the decrees terminating his parental rights to A.M.H. (born in October of 2009) and C.E.H. (born in February of 2012) (collectively, Children) and from the orders changing Children's permanency goal to adoption.[1] Father argues that the Philadelphia Department of Human Services (DHS) failed to present clear and convincing evidence supporting the termination of his parental rights or changing Children's permanency goal to adoption. We affirm.

Briefly, on June 9, 2022, DHS received a General Protective Services (GPS) report indicating that Children did not have a place to stay. As part of its investigation, DHS caseworkers determined that Father was transient, Mother was living in her car, and Children had been staying with their paternal uncle and aunt. Further, Paternal Uncle had thrown Father out of Paternal

---

[1] Mother's parental rights to Children were terminated on the same date. Mother filed separate appeals from the termination decrees, which we will address in a separate memorandum.

Uncle's home after a dispute. On or about June 11, 2022, Children began staying with their maternal cousin, A.B, and her husband, J.B. (Foster Parents).

The trial court adjudicated Children dependent on August 31, 2022. DHS subsequently formally placed Children in kinship foster care with Foster Parents and Children have remained with Foster Parents throughout the underlying dependency matter. DHS filed petitions to involuntarily terminate Father's parental rights to Children (TPR petitions) on April 22, 2024.

The trial court conducted a hearing (TPR hearing) on May 29, 2024. At the TPR hearing, Children were represented by guardian *ad litem* (GAL) Aaron Mixon, Esq., and by their legal counsel, Edward Louden, Jr., Esq. *See* N.T. TPR Hr'g, 5/29/24, at 2, 7; Order Appointing GAL, CP-51-DP-714-2022, 8/15/22; Permanency Review Order, CP-51-DP-714-2022, 2/28/24, at 2 (appointing Attorney Louden as Children's legal counsel).

At the hearing, DHS presented testimony from Anajah Custus, a Community Umbrella Agency (CUA) case manager. Father testified on his own behalf. The trial court also interviewed Children, then fourteen and twelve years old, *in camera*.[2]

_____

[2] We note that the notes of testimony from the trial court's *in camera* interviews with Children (and the trial court's order unsealing those notes of testimony for the purposes of appeal) are not included as part of the certified record. Rather, they are included as exhibits to Father's brief. DHS did not object to the accuracy of these notes of testimony. Because "their veracity is not in dispute, we rely on the copy contained within the reproduced record."
*(Footnote Continued Next Page)*

Ms. Custus explained that she had been the case manager for this family for two months. ***See*** N.T. TPR Hr'g, 5/29/24, at 14-15. She explained that DHS had opened the dependency matter because Parents had lost their housing, and Father was transient at the time. ***See id.*** After Parents lost their home, Children originally resided with Paternal Uncle, but Parents later arranged for Children to stay with Foster Parents. ***See id.*** Ms. Custus testified that Foster Parents have provided for Children's needs while Children have been in their care. ***See id.*** at 25-27. Father's single case plan objectives included visitation with Children, parenting skills training, obtaining appropriate housing, and random screenings for drugs and alcohol. ***See id.*** at 34.

The trial court referred Father to the Achieving Reunification Center (ARC)[3] on April 25, 2023 for parenting and housing services. ***See*** Exhibit DHS-4 at 28 (trial court docket entries, CP-51-DP-714-2022); ***see also*** N.T. TPR Hr'g, 5/29/24, at 37. Father completed training courses at the ARC regarding parenting and housing. ***See*** N.T. TPR Hr'g, 5/29/24, at 37, 43-44.

_____

***See C.L. v. M.P.***, 255 A.3d 514, 518 n.3 (Pa. Super. 2021) (*en banc*) (citation omitted). We remind counsel that it is an appellant's "responsibility to provide a complete certified record on appeal." ***In re J.F.***, 27 A.3d 1017, 1023 n.10 (Pa. Super. 2011) (citations and quotation marks omitted); ***see also*** Pa.R.A.P. 1921, Note (stating "[u]ltimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials" (citation omitted)).

[3] ***See In re D.R.-W.***, 227 A.3d 905, 909 (Pa. Super. 2020).

However, as of the date of the TPR hearing, Father did not have appropriate housing because he was residing in a shelter. *See id.* at 44.

On May 15, 2024, a Chester County magisterial district judge issued a bench warrant for Father in connection with a criminal matter where Father had been charged with theft-related offenses. *See id.* at 40; *see also* Exhibit DHS-7. Father told Ms. Custus that he would contact the public defender's office to address the bench warrant, but the warrant remained outstanding as of the date of the TPR hearing.[4] *See* N.T. TPR Hr'g, 5/29/24, at 40.

Ms. Custus testified that Father had struggled with alcohol abuse in the past. *See id.* at 35. Ms. Custus directed Father to attend drug and alcohol screenings at the trial court's Clinical Evaluation Unit (CEU)[5] on April 29, 2024 and May 24, 2024, but Father did not attend either screening. *See id.* at 21, 35. Father told Ms. Custus that he was not able to attend, but did not provide any additional information regarding his failure to appear. *See id.* at 35, 44.

Ms. Custus testified that Father had visitation at Children's discretion, and Father has not visited Children since they were placed with Foster Parents. *See id.* at 36. Father told Ms. Custus that he wanted to visit Children, but they did not wish to see him. *See id.* at 44. As of the date of the TPR hearing, Children did not want further visitation with Father because Father had been

_____

[4] The certified record does not contain any evidence regarding the outcome of the criminal proceedings against Father.

[5] *See In re K.J.*, 27 A.3d 236, 239 (Pa. Super. 2011).

inconsistent in attending visits in the past and they felt let down. *See id.* at 36-37, 44. Ms. Custus opined that visitation is necessary for Father to maintain a bond with Children. *See id.* at 37.

Ms. Custus opined that Children would not experience irreparable harm if Father's parental rights were terminated because Children reported that they do not have a parental relationship with Father and do not want to have a relationship with Father. *See id.* at 38-39; *see also* N.T. *in camera* examination of A.M.H., 5/29/24, at 7; N.T. *in camera* examination of C.E.H., 5/29/24, at 5, 7-8. Ms. Custus opined that termination of Father's parental rights was in Children's best interests so that they can be adopted. *See* N.T. TPR Hr'g, 5/29/24, at 42-43. Children have been interviewing with potential adoptive parents and Ms. Custus explained that Children seem excited to find a family that will provide them with a sense of belonging. *See id.* at 26, 28; *see also* N.T. *in camera* examination of A.M.H., 5/29/24, at 8; N.T. *in camera* examination of C.E.H., 5/29/24, at 6.

Father testified that he lost his home in November of 2022 and that he has resided in a shelter for the past one and one-half years. *See* N.T. TPR Hr'g, 5/29/24, at 47, 50-51. Father explained that he and Mother asked Foster Parents to take Children in after Parents lost their home so Children would not have to live in a shelter. *See id.* at 49. Father further testified that he completed parenting and housekeeping classes at the ARC. *See id.* at 46-47. Father has been working as the head cook at a bar and grill for a few years.

*See id.* at 47. Father stated that he is saving up money to rent an apartment and has applied for housing assistance. *See id.*

Father explained that in the past he used to drink as many as ten beers in a day, but he was sober for the three or four months preceding the TPR hearing. *See id.* at 49. Father testified that a previous CUA case manager told him that he no longer had to attend drug and alcohol screenings. *See id.* at 48.

At the conclusion of the hearing, the trial court terminated Father's parental rights to Children pursuant to Section 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b) of the Adoption Act.[6] The trial court also ordered that Children's permanency goals were changed from reunification to adoption.

Father timely appealed from the decrees terminating his parental rights and from the goal change orders and simultaneously filed concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). In lieu of a Rule 1925(a) opinion, the trial court issued a notice of compliance with Rule 1925(a) in which it referred to sections from the notes of testimony where the court stated its reasons for terminating Father's parental rights on the record.[7] *See* Trial Ct. Rule 1925(a) Notice, 7/24/24, at 1-2 (unpaginated).

---

[6] 23 Pa.C.S. §§ 2101-2938.

[7] We emphasize that our standards of review require deference to the trial court's findings of fact and credibility determinations and that, generally, this requires the filing of an opinion pursuant to Pa.R.A.P. 1925(a). *See In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (noting that "there are
*(Footnote Continued Next Page)*

Father raises the following issues on appeal:

1. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S. § 2511(a)(1)?

2. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S. § 2511(a)(2)?

3. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S. § 2511(a)(5)?

4. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S. § 2511(a)(8)?

5. Whether the trial court erred by terminating the parental rights of [Father] under 23 Pa.C.S. § 2511(b)?

6. Whether the trial court erred by determining it to be in [] Children's best interest to change the goal from reunification to adoption?

Father's Brief at 5-6 (some formatting altered).

We begin with our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest

_____

clear reasons for applying an abuse of discretion standard of review in [dependency and termination of parental rights] cases" and acknowledging that "unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents" (citations omitted)); **see also In re S.K.L.R.**, 256 A.3d 1108, 1124 (Pa. 2021) (emphasizing that "[w]hen a trial court makes a 'close call' in a fact-intensive case . . . the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court").

unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re H.H.N.*, 296 A.3d 1258, 1263 (Pa. Super 2023) (citing *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013)); *see also In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (explaining that "the trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence" (citation omitted)).

> Termination of parental rights is governed by § 2511 of the Adoption Act[, 23 Pa.C.S. §§ 2101-2938]. Subsection (a) provides eleven enumerated grounds describing particular conduct of a parent which would warrant involuntary termination. In evaluating whether the petitioner proved grounds under § 2511(a), the trial court must focus on the parent's conduct and avoid using a balancing or best interest approach. If the trial court determines the petitioner established grounds for termination under § 2511(a) by clear and convincing evidence, the court then must assess the petition under § 2511(b), which focuses on the child's needs and welfare. [*T.S.M.*, 71 A.3d at 267].

*In re M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022) (some citations omitted and some formatting altered); *see also Q.R.D.*, 214 A.3d at 239 (explaining that if "the court determines the parent's conduct warrants termination of his or her parental rights, the court then engages in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child" (citation omitted and formatting altered)). We note that we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm

an order terminating parental rights. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

### Section 2511(a)(2)

Father argues that the trial court erred when it concluded that clear and convincing evidence existed to justify involuntarily terminating his parental rights pursuant to 23 Pa.C.S. § 2511(a)(2). Father's Brief at 15-16. Specifically, Father contends that DHS failed to prove by clear and convincing evidence that termination was appropriate under that subsection because Father "has employment, [and] completed the objectives of parenting and housing. Father wanted to visit [] Children but [] Children did not want to visit him. He is willing to remedy the issues that brought [] Children into care." ***Id.*** at 16 (citation omitted and some formatting altered).

Section 2511(a)(2) provides as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

To satisfy the requirements of [Section] 2511(a)(2), the moving party must prove (1) repeated and continued incapacity, abuse,

- 10 -

neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied.

*In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019) (citations and quotation marks omitted).

Further, this Court has explained:

Unlike subsection (a)(1), subsection (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. Therefore, the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and strong, continuous parental ties, which the policy of restraint in state intervention is intended to protect. This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it.

*In re E.A.P.*, 944 A.2d 79, 82 (Pa. Super. 2008) (internal citations and quotation marks omitted).

Thus, while "sincere efforts to perform parental duties," can preserve parental rights under subsection (a)(1), those same efforts may be insufficient to remedy parental incapacity under subsection (a)(2). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." [*In re A.L.D.*, 797 A.2d 326, 340 (Pa. Super. 2002)]. A "parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *Id.*

*In re Z.P.*, 994 A.2d 1108, 1117-18 (Pa. Super. 2010) (some citations omitted and formatting altered).

- 11 -

It is well-established that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

Here, the trial court explained:

[C]hildren in this case were adjudicated [dependent] on August 31, 2022, which was 21 months ago, and TPR petitions were filed on April 22, 2024.

This is not a case just about housing. This is a case for a number of objectives that haven't been met by [] Parents. Both Parents were last in attendance in court on August 31, 2023. At that time, the order reflected that [] Parents had remaining objectives, which included the CEU and the screenings since last August, and they have not been meeting their objectives since that time.

Despite the testimony today, I don't find that they were in moderate compliance and progress. I find that their compliance and progress since the last hearing date is minimal for both of them.

\* \* \*

Under 2511(a)(2), it indicates "the repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control, or subsistence necessary for his or her physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."

It's been almost two years since the case was adjudicated, and Parents have not demonstrated an ability to rise beyond any moderate compliance and moderate progress throughout the life of this case, and in any event, their compliance and progress have decreased throughout the life of this case. We've seen . . . arrest and active bench warrants. We've seen a number of issues to

show that these children have been without the essential parental care and control from [] Parents throughout the life of this case and that the causes of incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent.

The fact that Parents completed a parenting or housing course, at this point, almost a year ago and have not been actively able to demonstrate that those programs have allowed them to obtain housing or demonstrate an ability to parent [Children] is not enough to show that they have the ability to remedy the situation.

[Children] are the life of this case. [They h]ave been open to allowing [] Parents the time to show them that they have the ability to parent them, and they're open to having that relationship, but apparently, [Children], at this point, have reached the point where they are not willing to do that. But they have given [] Parents both adequate time to prove to them, not just with their words and representations they make when they've sporadically shown up in court, but through their actions, to show them that they want to be there for them as [] Parents and they have not done that for the life of this case.

N.T. TPR Hr'g, 5/29/24, at 58-62 (some formatting altered).

Following our review, we conclude that the trial court's findings are supported by competent, clear, and convincing evidence in the record, and we find no error in the trial court's legal conclusions. *See H.H.N.*, 296 A.3d at 1263. The record confirms that Father has made minimal progress with his single case plan objectives during the almost twenty-one-month period in which Children has been in DHS's care at the time of the hearing. *See* N.T. TPR Hr'g, 5/29/24, at 34. Specifically, Father has failed to visit Children, obtain adequate housing, or consistently take part in drug and alcohol screenings. *See id.* at 35-39, 44, 47, 50-51.

Therefore, on this record, we conclude that DHS has established by clear and convincing evidence that Father has a repeated and continued incapacity;

- 13 -

Father's incapacity has caused Children to be without essential parental care, control or subsistence; and the cause of Father's incapacity cannot be remedied. *See C.M.K.*, 203 A.3d at 262; *see also Z.P.*, 994 A.2d at 1117-18; *R.J.S.*, 901 A.2d at 513 (explaining that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities"). For these reasons, we discern no abuse of discretion by the trial court in concluding that termination was appropriate under Section 2511(a)(2).[8] Accordingly, Father is not entitled to relief on this claim.

## Section 2511(b)

Next, Father argues that the trial court erred when it concluded that clear and convincing evidence established that termination of Father's parental rights was in Children's best interests. Father's Brief at 18-19. Specifically, Father contends that "Children know [Father] as their father. However, they do not want to visit Father. Services should be put in place to repair the relationship between [] Children and [Father]. It would not serve the developmental, physical and emotional needs of [] Children to terminate Father's [parental] rights." *Id.* at 19 (some formatting altered).

Section 2511(b) states:

---

[8] We reiterate that we need only agree with the trial court as to one subsection of Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights. *See B.L.W.*, 843 A.2d at 384.

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

This Court has explained:

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)), *abrogated in part on other grounds by In re K.T.*, 296 A.3d 1085 (Pa. 2023).

Our Supreme Court has stated that "if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which 'is not always an easy task.'" *K.T.*, 296 A.3d at 1106 (quoting *T.S.M.*, 71 A.3d at 267). In *K.T.*, our Supreme Court explained that "a court conducting the

- 15 -

Section 2511(b) needs and welfare analysis must consider more than proof of an adverse or detrimental impact from severance of the parental bond." *Id.* at 1113. Indeed, the *K.T.* Court emphasized that "the parental bond is but one part of the overall subsection (b) analysis, which includes a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *Id.*

"Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268 (citation omitted). More specifically, courts must consider "the child's need for permanency and length of time in foster care[;] whether the child is in a pre-adoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical and emotional needs, including intangible needs of love, comfort, security, safety, and stability." *K.T.*, 296 A.3d at 1113 (footnote omitted and formatting altered).

In weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *T.S.M.*, 71 A.3d at 269. "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

Lastly, our Supreme Court has explained that "[n]either subsection (a) nor (b) [of Section 2511] requires a court to consider the reasonable efforts

provided to a parent prior to termination of parental rights." ***In re D.C.D.***, 105 A.3d 662, 672 (Pa. 2014). However, an agency may not refuse to provide reasonable efforts for reunification "and then point to the resulting erosion in the parental bond created by the agency as justification for termination of parental rights." ***Id.***; ***see also In re T.J.J.M.***, 190 A.3d 618, 631 (Pa. Super. 2018) (reversing the termination of the father's parental rights where, among other things, the CUA caseworker arranged for the father to have a single session of supervised visitation when the father was not working and all other periods of visitation that were offered to the father conflicted with his work schedule).

> Here, the trial court explained:
>
> Under 2511(b), there is no parent-child bond between [A.M.H.] and [C.E.H.] in either of the biological parents. There was – [Children] both testified quite clearly that they didn't feel that [Parents] were parents to them when they were in their care, and [Children] certainly have not experienced any kind of parental bond with [Parents] since they've been removed from [Parents'] care, and [Children are] both interested in severing the rights of their parents because there is no parental bond. [Children] don't look to [Parents] to meet any of their needs.
>
> I find that they would suffer no irreparable harm in terminating parental rights in the case, and I find that it's in [Children's] best interest to change the goal to adoption today.

N.T. TPR Hr'g, 5/29/24, at 64-65.

Based on our review of the record, we discern no abuse of discretion by the trial court in concluding that termination of Father's parental rights would best serve Children's developmental, physical, and emotional needs and

welfare. *See **K.T.***, 296 A.3d at 1113; ***T.S.M.***, 71 A.3d at 267. Although Children are not in a pre-adoptive home, Children have been interviewing with prospective adoptive parents and are excited by the prospect of being adopted into a family that will provide them with a sense of belonging. *See* N.T. TPR Hr'g, 5/29/24, at 26, 28; *see also* N.T. *in camera* examination of A.M.H., 5/29/24, at 8; N.T. *in camera* examination of C.E.H., 5/29/24, at 6. Ms. Custus testified that Children would not experience irreparable harm if Father's parental rights were terminated because they do not have a parent-child relationship with Father. *See* N.T. TPR Hr'g, 5/29/24, at 38-39. Ms. Custus opined that termination of Father's parental rights was in Children's best interests so that they can be adopted. *See **id.*** at 26-28, 42-43.

Further, DHS was not required to provide reasonable services to facilitate reunification as a prerequisite to seeking termination of Father's parental rights. *See **D.C.D.***, 105 A.3d at 672. Therefore, Father's argument that DHS should have provided services to repair his relationship with Children is meritless. ***Id.***

For these reasons, we discern no abuse of discretion by the trial court in concluding that termination was appropriate under Section 2511(b). *See **H.H.N.***, 296 A.3d at 1263. Therefore, Father is not entitled to relief on this claim.

## Goal Change

Lastly, Father argues that the trial court erred by changing Children's permanency goals from reunification to adoption because "Father has

employment, wants to visit the children, [and] completed parenting and housing. Father has taken steps to remedy the condition that brought the children into care." Father's Brief at 20.

Given our disposition affirming the termination decrees, Father's issue pertaining to the trial court's goal change orders is moot. *See D.R.-W.*, 227 A.3d at 917 (stating that "[a]n issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect" (citation omitted)); *see also In re Adoption of A.H.*, 247 A.3d 439, 446 (Pa. Super. 2021) (stating that "the effect of our decision to affirm the orphans' court's termination decree necessarily renders moot the dependency court's decision to change [a c]hild's goal to adoption" (citation omitted)). Therefore, Father is not entitled to relief on this claim.

For these reasons, we affirm the orders changing the Children's permanency goal from reunification to adoption and the decrees terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Decrees affirmed. Orders affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/11/2025